*JOHN C. LARWILL V. STEVENSON BURKE ET AL.

1. ESTOPPEL,—PARTICIPATING IN DIVIDENDS.

　　Where the directors, having the control of a corporation, negotiate a sale of its property, and make an informal distribution of the proceeds, by dividing the same directly among the stockholders, those receiving such dividends, without protest, and acquiesing in such distribution, and those standing silently by and permitting it, are estopped from requiring the directors to pay such money in to the corporation or claiming that the division was not according to law, unless it appears that in some way the directors and others to whom distribution was made received some advantage over other stockholders who had clear title to some portions of the fund.

2. DIRECTORS NOT LIABLE AS TRUSTEES.

　　The rule that directors, through a fraudulent breach of trust, or misapplication of funds, causing injury to property; or by acts *ultra vires,* become liable as trustees, does not apply to an informal distribution of dividends.

3. DIVIDENDS—TERM APPLIES TO CAPITAL.

　　The term "dividend" simply means "divide" and is not confined in law to a division of net earnings, but applies as well to a division of the capital of a corporation.

4. STATUTE RUNS ONLY AFTER DEMAND.

　　Dividends declared on the capital stock of a corporation are payable on demand, and are not subject to the running of prescription or limitation until there has been a demand and a refusal to pay.

5. DENIAL OF TRUST—LIMITATIONS.

　　A refusal of directors to pay one who claims to be a stockholder in a corporation any portion of a fund to be distributed, claiming that he has no interest in the same, amounts to a denial of the trust and the statute of limitations runs against the *cestui que trust.*

6. PRINCIPLES APPLY TO SUIT AT LAW OR IN EQUITY.

　　An action on such a claim, whether in equity for an accounting or by an action at law, is subject to the bar of the statute; the same legal principals apply; the only difference is that in one case the amount to be recovered is known; in the other, that it must be determined by an accounting.

7. RIGHT OF STOCKHOLDERS TO SUE ON BEHALF OF CORPORATION.

　　Where the directors of a corporation, through a fraudulent breach of trust or by a misapplication of funds, have caused an injury to the corporation in its corporate capacity or in its corporate possessions, or have committed acts *ultra vires,* and the corporation fails or refuses to prosecute, the stockholders may sue on behalf of the corporation to recover the loss or set aside the *ultra*

---

*For another decision in this case, in which the rules laid down in this case are followed, see *ante* 579.

*vires* acts. But such action cannot be maintained by the stockholders where the act of the directors, though unlawful, is injurious to no one, as for a mere informal distribution of dividends.

**8. PRACTICE—HEARING ON DEMURRER.**
A demurrer to an answer interposing a plea of the statute of limitations, in an action by a stockholder to compel directors of a corporation to account for the proceeds of a sale of property, raises an issue of fact which can only be determined upon evicence, and the only question to be determined upon the pleadings is whether the petition states a cause of action. If not, the demurrer should be overruled.

CALDWELL, J.

APPEAL from the Court of Common Pleas of Cuyahoga county.

The plaintiff in his petition states that about the month of August, 1873, the defendant, The Snow Fork & Cleveland Coal Company, was organized under the laws of the state of Ohio, for the purpose of purchasing and holding mineral lands and of mining and shipping coal and iron ores in the Hocking Valley in said state. That he purchased 5,618.86 acres of valuable coal and iron ore lands situated in the Hocking Valley. That the company was capitalized at 30,000 shares, of the par value of $100 each, and that the shares were subscribed for, and that there was paid up and issued 27,849 shares and no more. And the plaintiff avers that long prior to the year 1881 he became and is now the owner of 2,860 shares fully paid up of the capital stock of the Snow Fork & Cleveland Coal Company of the face value of $286,000, and he tells us how that is evidenced by certain certificates of stock; and he says that all of said certificates bear date of February 24, 1874, except one, which is dated June 10, 1874.

And he says that on September 30, 1881, and for some time prior thereto, the defendants, Stevenson Burke, William D. Lee, and Charles Hickox, the latter now deceased, were directors and also comprised the executive committee of the Snow Fork & Cleveland Coal Company, and Burke was also its president. That in the spring of the year 1881, Burke and Hickox, became largely interested as stockholders and otherwise in the Columbus, Hocking Valley & Toledo Railway Company, which was a corporation formed by the consolidation of three railway companies of Ohio, known as The Columbus & Hocking Valley Railway Company, The Columbus & Toledo Railway Company, and The Ohio & West Virginia Railway Company.

That Burke and Hickox, with their associates in said Columbus, Hocking Valley & Toledo Railway Company, desired to borrow for the same the sum of $14,500,000 and proposed to secure the same by a mortgage on all of the property and franchises of the Columbus, Hocking Valley & Toledo Railway Company and for the purpose of further securing the proposed consolidated loan, they, the defendants, Burke and Hickox and their associates in interest of the Columbus, Hocking Valley & Toledo Railway Company desired to subject to the lien of the said mortgage a large body of valuable coal and iron ore lands, situated on the line of said railway, which lands included all the coal lands owned by the said Snow Fork & Cleveland Coal Company.

That in furtherance of this proposition, the said Burke and Hickox sought to acquire control of the majority of the capital stock of the said Snow Fork & Cleveland Coal Company and did purchase and get control of all of said stock not theretofore owned by them, except the stock

owned and held by this plaintiff and the defendants Hull and Lee, Nutter, Estep, F. F. Hickox and Maholm.

That shortly before September 30, 1881, for the purpose of enabling them to thus subject said lands of the Snow Fork & Cleveland Coal Company to the said consolidated railway lien, Burke and Hickox, and others whose names he says were unknown to him, organized, under the laws of Ohio, a corporation called The Hocking Coal & Railway Company; and that on September 20, 1881, the defendants, Burke, as president of the said Snow Fork & Cleveland Coal Company, and Charles G. Hickox, son of Charles H. Hickox, deceased, as secretary thereof, executed in the name and under the corporate seal of the said Snow Fork & Cleveland Coal Company, and delivered to the Hocking Coal & Railway Company a warranty deed by which they sold the 5619.86 acres of land aforesaid; and he says that this was for the nominal consideration of $842,976, but which was not, however, the real and actual consideration for the said conveyance.

The plaintiff says that he is unable to state precisely what the said consideration was for said conveyance—that is in form; and alleges that it consisted of stocks and bonds received by said defendants, Burke and Charles Hickox, and the said Columbus, Hocking Valley & Toledo Railway Company of at least the value of $1,685,958.

That said conveyance was made without the knowledge or consent of the plaintiff, or the knowledge and concurrence of the defendant Lee, who, with the defendants Burke and Charles Hickox were directors —that is, it means, I suppose, that Lee was a director with Burke and Hickox.

Then he goes on to state that Burke and Hickox were largely interested in and had control of the Hocking Coal & Railway Company on the day following the date of the execution and delivery of the deed by the Snow Fork & Cleveland Coal Company to the Hocking Coal & Railway Company October 1, 1881, the latter company, at the instance and under the direction of defendants Burke and Charles Hickox, united with the Columbus, Hocking Valley & Toldeo Railway Company in an execution and delivery of a mortgage or deed of trust to the Central TrustCompany of New York in trust for the amount that I have above referred to. And he says that nearly all of said bonds have been sold and are in the hands of innocent holders, and that he can not, therefore, proceed to set aside the sale nor recover the bonds.

The plaintiff says, that, being the owner and having control of 22,-490 of the 27,859 shares issued of the capital stock of the Snow Fork & Cleveland Coal Company, and constituting a majority of the executive committee and being directors of said company, they, the defendants Burke and Hickox, were in complete management and control of the same at the date of the conveyance of the said lands to the said Hocking Coal & Railway Company.

That since the date of said conveyance, there has been no change in the personnel of the management and control of the said Snow Fork & Cleveland Coal Company, and, for that reason, any demand upon said company to commence suit against defendants Burke and Charles C. Hickox, as administrator of Charles Hickox, deceased, to compel them to account for the stock and bonds or other property so received by them as the consideration for said conveyance, would be idle and nugatory.

The plaintiff then avers that since the date of said conveyance to the said Hocking Coal & Railway Company, the Snow Fork & Cleveland Coal Company has, under the control and management of the defendants Burke and Charles Hickox as such directors and executive committee, and in control of the majority of the capital stock of said company, ceased to do business and practically abandoned the object for which it was incorporated; and that the debts and all claims against the Snow Fork & Cleveland Coal Company have been paid. That it was the object and purpose, among other things, of defendant Burke and said Charles Hickox in bringing about the sale and conveyance of said lands. to the said Hocking Coal & Railway Company, to wind up the affairs of the said Snow Fork & Cleveland Coal Company and to that end procured the said stocks and bonds in the said Copumbus, Hocking Valley & Toledo Railway Company, which formed the consideration for .the said conveyance as aforesaid, to be transferred. to them, and that upon receipt thereof, but without any formal action for that purpose having been taken by the said Snow Fork & Cleveland Coal Company, and without any right or authority whatever to do so, the said Burke and Charles Hickox proceeded to apportion and divide up among themselves and their associate stockholders, said stocks and bonds, in proportion to their respective shares in the capital stock of said company.

And the plaintiff is informed and alleges it to be, that he and all of the stockholders in said company, save and except the plaintiff, have received either in kind their respective proportions of said stocks and bonds, or their equivalent in money.

Plaintiff has repeatedly demanded of the said Burke and Hickox and the Snow Fork & Cleveland Coal Company, his proportionate share of said stock and bonds, but that they have refused and have ever since refused and still refuse to account to him for his share of the same or any part thereof. That in the sale of said lands and the receipt of said stock and bonds as the consideration therefor, the defendant Stevenson Burke and the said Charles Hickox acted in their official character as directors and members of the executive committee of the said Snow Fork & Cleveland Coal Company as aforesaid, and therefore received and held said stock and bonds expressly in trust for said company and for each and all of its stockholders; that the defendant Stevenson Burke and the said Charles. Hickox, in his lifetime, and the said Charles G. Hickox, as his administrator since his decease herein mentioned, have ever since occupied and still occupy the same trust relation in the premises and are therefore liable in equity to account to plaintiff for his share and portion of said stock and bonds.

The plaintiff than sets out that on May 26, 1886, he commenced an action in the court of common pleas of Franklin county, state of Ohio, against said defendants Burke and Hickox, to compel them to account for and turn over to him his share of said stock and bonds and other property, alleging, in substance, the same facts set forth in this petition.

That thereafter he procured the Snow Fork & Cleveland Coal Company to be made a party defendant in said action, and had summons issued a upon said company and thereupon the defendant Burke, with the concurrence of said defendant Hickox, and assuming to act on behalf of the company, but without any authority whatever from the board of directors of said company to so act and for the purpose of hindering. delaying

Larwill v. Burke.

and embarrassing said plaintiff in his said cause, procured said court to set aside and vacate the service of said summons, and thereafter, on June 25, 1896, the plaintiff dismissed his cause without prejudice to a further action.

That the defendants Hull, Lee, Nutter, Estep, F. F. Hickox, and Maholm, claim to have and own shares of the capital stock in the Snow Fork & Cleveland Coal Company; then sets out the death of Charles Hickox, and that Charles G. Hickox is the duly appointed and qualified administrator of the estate of Charles Hickox, deceased; and the plaintiff prays that the said Snow Fork & Cleveland Coal Company, the defendants Hull, Lee, Nutter, Estep, F. F. Hickox and Mahollan may be required to set up any interest or claim they may have in and to the stocks and bonds and other property received by the defendant Burke and said. Charles Hickox as a consideration for the conveyance of said lands to the said Hocking Coal & Railway Company; and that the defendants Burke and Charles G. Hickox as administrator may be required to account for said stock and bonds and all property received by the said Burke and Charles Hickox as the consideration for said conveyance together with any and all interest and dividends received by them thereon; and if any of the property has been sold, then to account for the proceeds of such sale. And that the defendants Burke and the said Charles G. Hickox, as administrator, and the Snow Fork & Cleveland Coal Company be required to transfer and pay over to the plaintiff such share or proportion as shall be found due him of the said stock and bonds or other property found in their hands and the interest and dividends received thereon and the proceeds of any sale or sales thereon; and for such other and further and different equitable relief as shall be just in the premises.

W. D. Lee and Eli Hull each filed an answer and cross-petition in the case. In their answers they raise an issue with the plaintiff as to the ownership of certain certificates of stock, and each claiming that certain certificates of stock that Larwill claimed to belong to him in his petition, belonged to him. And, second, by way of cross-petition, they admit and repeat the allegations of the petition not denied as aforesaid, except that they do not claim to have made any demand for any portion of the funds resulting from the sale of bonds, as claimed in the petition to be in the hands of Burke and Hickox, and the claim that they have not received their proportion of the stocks and bonds that they are entitled to by reason of being stockholders in the Snow Fork & Cleveland Coal Company, and they ask in their prayer to their cross-petition substantially as the plaintiff does in his petition.

Other cross-petitions were filed in the case, but it is unnecessary on this consideration to say anything about them.

In the answer to the amended petition and to the cross-petition of Lee and Hull filed by Burke and Hickox, administrator, among things it is set out that they hereby adopt their answer to the original petition and answer and cross-petitions as in answer to said amended petition and make their former answer a part of this answer, the same as if all the facts and allegations therein contained were herein repeated; and in the former, the defense set out under head number three: "And for a further defense these defendants say that the alleged cause of action attempted to be stated in the petition and several cross-petitions, do not,

nor did either of them, accrue at any time within four years last preceding the bringing of said action, and for a further defense these defendants say that the alleged cause of action attempted to be stated in the petition, and said several cross-petitions, do not, nor did either of them, accrue at any time within six years last preceding the bringing of said action, and for a further defense these defendants say that the alleged cause of action attempted to be stated in the petition and said several cross-petitions do not, nor did either of them, accrue at any time within ten years last preceding the bringing of said action.''

To this defense of the statute of limitations set up in the answer a demurrer was filed, and we are called upon in the hearing of this case to first determine whether the demurrer is well taken.

This demurrer raises an issue of fact which can not be fully determined except on a hearing of the evidence. And the only question that can be determined at this time and the only question raised by the demurrer, is whether the petition sets out a good cause of action.

The plaintiff files the demurrer and, if the demurrer is good as against his petition, for the reason that the petition does not state a good cause of action, then the demurrer should be overruled. And the only question to be determined is whether the petition states a good cause of action.

Demurrers have been filed by the cross-petitioners, Hull and Lee, to the same part of the answer; and what is true of the petition just stated, is equally true of the cross-petitions; and if the petition and cross-petitions should be found to state a good cause of action, still the demurrer would have to be overruled, as any other consideration of it must be determined upon the facts of the case.

The issue, then, under these demurrers, to be decided, and the only one that we have considered, is whether a good cause of action is stated in the petition.

The petition avers that Burke and Hickox came into the possession of the stocks and bonds issued by the railroad company in 1881; that in 1881 he made his demand upon them for his portion of the bonds or money realized from the bonds, and that they refused to account to him at that time or at any time since and are still refusing to acount to him for any portion of the funds realized from the bonds. And the purpose of the petition is to hold them as trustees for the corporation and for the stockholders of the corporation to account to him for any funds due him as stockholder of the company, should he prove to be such, or under his claim that he is such stockholder. His claim is that as such trustees, Burke and Hickox were, at the time of receiving the bonds, and still are, trustees of a continuing and subsisting trust, and that as against such trusts there is no limitation as to when he may bring his action to enforce the same. He does not seek to bring this action in his own personal right in any other way than through the company. It is the law of this state and of many other states, as well as of England, that the directors of a corporation are trustees for the stockholders as well as for the company, but the exact nature of that trust relation is in great conflict in the courts; some holding that their relation is one of confidence and of a fiduciary character, but not such as amounts to that of a continuing and subsisting trust; while other courts hold that it is a continuing and subsisting trust.

The statutes of limitation in Ohio exempts from their application continuing and subsisting trusts. And it is contended that by virtue of such exemption, there is no statute of limitations that can be pleaded by a trustee to a continuing and subsisting trust. On the other hand, it is contended that while it is true that the statute of limitations does not apply to a continuing and subsisting trust, while that trust relation exists, yet if the trust relation is severed by the act of the trustee, or if a cause of action at law arises in favor of the *cestui que* trust against the trustee, which cause of action may be prosecuted either at law or equity, then the statute of limitations does apply to such action, and such action, and such application of the statute of limitations to it, constitute a defense by way of limitation to a continuing and subsisting trust.

And it is contended on behalf of the defendants, that if Burke and Hickox were ever the trustees of the corporation and of the plaintiff in this case as to the fund claimed by the petition to be in their hands, such trust relation has been terminated on behalf of the corporation, by reason of the fact that the corporation had an action at law against them, against which action of law the statute of limitations has run, and that when the plaintiff in his petition avers that he demanded of Burke and Hickox his proportionate share of the funds for which the property of the company was sold, and he was refused, and refused on the ground that they owed none to him and that he had no right to any portion of it, that this terminated the trust relation between them and gave him a cause of action to recover any portion of said funds if he could establish his right to them; and not having prosecuted that cause of action within the time required by the statute of limitations, that any action that he may now bring is barred, even though the trust was that of a continuing and subsisting one.

These are some of the questions that we are called upon to decide in determining whether the petition states a good cause of action.

It must be remembered that all the property belonging to The Snow Fork & Cleveland Coal Company was sold and transferred; that all its debts and obligations have been paid out of the proceeds of the sale and all the stockholders except the plaintiff have been paid. The payment of this property to the several stockholders was in the nature of the payment of a dividend.

Dividend, technically speaking, is generally confined to the payment of the net earnings of a corporation among the stockholders; yet it has been extended to the dividing among the stockholders, of a nortion of the capital or the whole of it, and it is still called "dividend." The meaning of the word "dividend" is simply "to divide." And the term "dividend" is not confined in law to the division simply of net earnings, but applies equally well to a division of the capital.

In Clarkson v. Clarkson, 18 Barb., 646, 657, the court undertakes to define a dividend and uses this language: "A sum of money distributed *pro rata* among the stockholders without reference to the source from which it was taken or paid."

That case was carried up to the court of appeals and in 3 Keyes that court explained the term "dividend" to include a division of a portion of the capital stock of the company.

Burke and Hickox, by the allegations of the petition, undertook to divide among the stockholders the entire capital of The Snow Fork & Cleveland Coal Company. This was done with the knowledge, evi-

dently, of the Snow Fork company and, if it was not done strictly by them as directors of the company, yet the company acquiescing therein and continuing to acquiesce therein, would be estopped after the money had thus been paid out, to require that the custodians should pay it into the company. This would be true, whether the company was under the influence of the persons holding the money or not; for, if we consider the company composed of the stockholders as a body, and they making no objection to such payments, and the payment, so far as made, not being unlawful nor any way contrary to law, the stockholders themselves would be estopped from requiring the custodians of the money after they had paid it out lawfully, to then pay it into the company—they having knowledge of such payments at the time they were made. And so far as the company and the persons who made the dividends and all persons who received the same, as well as all stockholders who stood silently by and saw the monies thus lawfully paid, would be estopped from claiming that it was not a division of the capital of the company accordingly to law, unless it could be shown that in some way the custodians of the funds and other stockholders to whom they had paid had received some advantage over other stockholders who had a clear title to some portion of the money.

This being, then, a dividend made by the officers of the company, it seems to us clear that it is as much a dividend as though the money had been paid into the company and the company had declared a dividend of those funds and had paid them out so far as they have been paid. And if that had been the way in which the thing was done, then as soon as the dividend was declared, whether the declaration was by resolution or by proceedings to divide up without any formal action on behalf of the company, the remedy for a stockholder would be one at law to sue the company for his proportion of the funds or for his dividend. And if the company had allowed the money to be retained by Burke and Hickox, it was so retained for no other purpose than to be paid out to the sotckholders, and all but what was going to the plaintiff was so paid according to the allegations of the petition, and such appears the state of affairs under the allegations of the petition—then the remedy would be, the corporation being being the debtor to a stockholder, and the corporation allowing or placing or permitting the funds to be in the hands of Burke and Hickox for the purpose of being paid over to the stockholders, such a promise would inure to the benefit of the stockholders and at once would arise an action at law on behalf of the stockholders against Burke and Hickox to recover on that promise which may not be expressed but which may be an implied promise as it was in this case. But that implied promise is to pay only to such as are stockholders.

The petition shows that Larwill seemed to act upon this understanding: that Burke and Hickox were paying to all the stockholders and to each stockholder his proportionate share of the property, by his going to them and asking them for his proportionate share, and being denied. He did not go directly to the corporation and through the corporation seek to have them pay to him the money that he claimed was due him, but seemed to go directly to these directors, seeming thus to recognize their authority to pay others and to pay him. And if they stood in such relation to the company that their promise to pay the company, which is implied in law and which they undertake to do by paying directly

Larwill v. Burke.

to the stockholders, it would give rise to the cause of action at law on the part of Larwill against the custodians of the money. But it may be objected that this is not a case where that doctrine can be applied under the allegations of this petition for two reasons: The petition avers that while the Snow Fork company's property was sold at $150 an acre, that that was not its true value but only a nominal value, and the true value and consideration he is unable to state, and that the plan by which the property was sold and the price for the same realized, was such that he is entitled not only to $150 per acre for which the Snow Fork company sold its property but that he is entitled to that received after it was placed in other property and then bonded. And the second circumstance under which it is claimed that this action at law could not lie is, that the petition shows that all the debts and obligations of the company have been paid, and the inference might fairly be drawn that it has been paid out of these funds realized; so that the exact amount that the plaintiff is entitled to, recover can not be fully ascertained without an accounting, for these two reasons.

Taking it for granted that Larwill could not sue at law, but would be compelled to prosecute a proceeding for accounting, and, after determining how much was due him if anything, then to have that amount paid to him by the decree of the court, still that is an action against the persons who have handled this money, Burke and Hickox; he is calling upon them to account for the amount for which they sold this property, whether it be the $150, or a greater sum, and to account for all debts and liabilities paid on their behalf. Still, if they hold this fund for his benefit and have undertaken to account directly to the stockholders instead of through the company, then their obligation is to account to him as a stockholder if he is such. Whether that is done in equity or by action at law, the same legal principles that underlie the liability of Burke and Hickox to him by an action at law, underlie the action in equity for an accounting; the only difference being that in the former the amount to be recovered is known and ascertained; in the latter, it is to be determined by an accounting.

Under the supposition that this cause of action was open to the stockholders and whether his remedy be at law or in equity, when would the cause of action arise? At the time the dividend was declared, which declaration would be at least as early as the stockholders were paid, or would it be after demand had been made upon the stockholders for payment?

The law seems to be quite general that dividends declared on the capital stock of a corporation and payable on demand, are not subject to the running of prescription or limitation until there has been a demand and refusal. The reason is, that though the declaration of a dividend creates a debt of the corporation in favor of the stockholders, it is a debt payable only on demand, and has been compared to the obligation of a bank to its depositors. If this is the true doctrine,—and we believe it to be the one to be followed under the authorities, then the dividend was not due the plaintiff, although one had been declared, until he made demand for the same; and the statute of limitations would begin to run from the time of such demand. His demand and refusal were in 1881.

This action was not brought for about fifteen years after that time, and it would be clearly barred by the statute of limitations and he would

have lost a right to sue and recover any portion of those funds under a plea of the statute of limitations.

But it is claimed here, that under this petition the corporation would have a right to compel Burke and Hickox to pay this money over to it, and that the company having that right and the stockholder having a right to share in that fund when distributed by the company, he would have a right, under the circumstances set up in his petition, to prosecute a suit on behalf of the company to require the monies to be paid into the company and then a dividend declared, and he, if found to be a stockholder, to receive that proportion that he would be entitled to under the facts of the case.

Suppose this, for the sake of the consideration of the other questions in the case, to be the situation. Then the first question that would arise, is, whether the defendant is such a stockholder as would entitle him to bring that kind of an action. Upon this question, there had been a great deal of learning displayed in the books and by different courts. And the courts are not unanimous as to how far and to what extent a stockholder may prosecute in behalf of the company or in his own right. It has been thoroughly settled, we think, that the directors of a company are held to good faith in their management of the corporation concerns, and from such proposition it follows that they are liable either to the corporation, or, in a proper case, to the shareholders for a fraudulent breach of trust or misapplication of corporate funds, whereby a loss or injury results to the corporation assets;—and it has been held in such cases, that frauds of any kind are not out of the reach of courts of equity, and so it has been held that they are liable for acts *ultra vires* in purchasing shares in a new corporation, or in any other manner wherein they undertake to deal beyond the authority of the corporation, and so they can not accept unauthorized securities in payment of stock, nor property for the payment of stock that is not anywhere near the equivalent, and for gross negligence by which the company has lost a portion or all of its property. But, in all these cases, the corporation has become injured in some manner in its corporate capacity or its corporate possessions, or there has been some act *ultra vires*; and any act that causes or is likely to cause a loss to the corporation, will directly affect the stockholders. And hence if the corporation fails or refuses to prosecute or it is useless to ask it to prosecute, then the stockholder, on behalf of the company, may prosecute to recover back what the company has lost, or to have the courts set aside acts *ultra vires*. But we find no case where the acts of the directors have been injurious to no one, neither the company nor the stockholders, although unlawful in that they have not complied with the strict form of law, where a stockholder is permitted to sue on behalf of the corporation.

In this case had the company insisted, in the first place, upon the money being paid over to it, it would have had a cause of action to require that to be done, and that cause of action would arise as soon as the money or stocks were realized by the directors, and could at that time be prosecuted. No demand was necessary on the part of the company, but the action would at once arise at law or in equity, to compel the directors to turn over the money to the company.

But, as I have already said, after the directors have gone on dividing this fund and have divided it legally and equitably, so far as appears from this petition, for this stockholder to now prosecute an action re-

quiring all of those funds to be paid in by the directors to the corporation after he has stood by, if he has and seen them lawfully paid out to the stockholders, would be most inequitable. And we apprehend and we think that the real ground of distinction is this: That when the directors become liable as trustees, they have undertaken to do something as trustees that they could not do and however much the company should acquiesce in the doing of those acts, they would never justify the trustees. Hence, in acting beyond their scope, they cease to act as directors, and act as trustees of the corporate property and duly liable for the same.

We find in the facts set up in the petition no such case. And, hence the principle that they acted beyond their powers to act, and hence did not act as directors but as trustees of a fund has no application to the case before us. To say the most of the act, is, that the directors acted informally, under the allegations of the petition: That they acted without going through the form of turning all the checks and funds over into the hands of the corporation so as to give its treasurer possession of the funds and deposit them in some bank in the name of the corporation instead of going through these formalities. The most that can be said is that they undertook to do it by the directors doing it directly themselves; and if in doing this, they did no unlawful act, did no act to the injury of the company, did no act *ultra vires*, did no act by which any stockholder was injured, then they acted as directors and would not be liable by reason of acting beyond their powers as directors.

The plaintiff was not injured for he would be compelled to seek his payment through the same persons that he did seek, and a rejection of his claim would be equally likely to occur in which ever way the matter was accomplished.

While there is authority from some of the text writers and some of the decisions cited, tending to show that a share holder alone may bring this action, while there are authorities both among the text writers and the decisions of courts holding that the stockholders may alone bring the action, and while some text writers have gone so far as to say that the directors are trustees not only for the company but for the stockholders both collectively and individually, yet we find among such authorities no case where it is held that an individual stockholder is entitled to prosecute on behalf of the company where there has been no injury to either the company or to the individual stockholder, and all that he requires by such proceeding is that the formalities of the law shall be complied with.

Suppose, then, that Larwill as a stockholder was entitled to bring this action as a *cestui que trust* and let it be taken for granted that the trust relations existing between him as *cestui que trust* and the directors as trustee, is that of a continuing and subsisting trust, is there then any statute of limitations applicable to a case of that kind under the facts of the petition?

Under the facts in the petition, he avers that in 1881 he demanded his portion of the monies realized from the sale of the property of the Snow Fork & Cleveland Coal Company. It is true in this case, that if he was entitled to any portion of those funds, he was entitled to them at the time that he made his demand. The directors of the corporation then had the money in their hands, or the stocks, with which to pay him. It was due upon his making the demand. If a thing was due

him, it was the duty of the directors or those holding the funds, to pay him at that time. They had the means to do it. So that a refusal to pay him then or thereafter or at any time, was equivalent to a declaration that he had no interest in that money; that he was not a *cestui que trust*. If this is not putting an end to the relation of trustee and *cestui que trust*, then it is hard to conceive what state of facts would accomplish that end. He certainly understood at that time that the directors refused to acknowledge that he had any interest whatever in those funds, and he says they have so contended from that time to the present. There has been one continued denial to him, under the declarations of his petition. It is certain in this case, to our minds, that if any state of facts will deny the trust relation, then the facts set up in this petition are sufficient for that purpose.

Now the purpose of the statute in regard to the commencement of actions providing that the limitations therein shall not apply to continuing and subsisting trusts, is that the possession and ownership or either, of the trustee, is the possession and ownership of the *cestui que trust*; and when this relation is severed and the parties so understand it, then the possession and ownership of the trustee will no longer be the possession and ownership of the *cestui que trust*, and thereafter and from such time of the revoking or setting aside or denial of the trust, the statute will run against the *cestui que trust*, as against any other person. This doctrine is one that has been thorougly considered by the best authorities in this and in all countries.

In our own state, Williams v. First Presbyterian Society, 1 Ohio St., 478, is a case of an express trust in real estate, and the court there says, in paragraph seven of the syllabus; "Although it is true, as a general rule, that as between trustees and *cestui que trust*, lapse of time is no bar, yet it is equally true, that where the former, with knowledge of the latter, disclaims the trust, either expressly or by acts that necessarily imply a disclaimer, and an unbroken possession follows in the trustee, or those claiming under him, for a period equal to that prescribed in the acts of limitations to constitute a bar, such lapse of time, under such circumstances, may be relied upon as a defense."

In Phillips v. State ex rel., 5 Ohio St., 122, 124, the court says:

"True it is, that the doctrine, that a technical or direct trust is not barred by lapse of time, is usually recognized, yet it is subject to the following important qualifications, namely: that this rule in equity is dispensed with, except in cases of fraud and concealment; first, where there is a remedy by action at law to which a limitation is expressly fixed; second, where an open denial or repudiation of the trust is brought home to the knowledge of the parties in interest."

Carpenter v. Cannal Co., 35 Ohio St., 307, 317, is equally in point.

The leading case on this subject is Kane v. Bloodgood, 7 Johns Ch., 88.

The rule as stated by Perry on Trusts, sec. 864, 5th ed., is as follows: "To enable the trustee without giving up the possession, to turn it into an adverse holding against a *cestui que trust* evidence must be clear and unmistakable and such adverse claim must be brought home at the time to the *cestui que trust* without question or doubt. The attitude of the trustee must be hostile and continuously so, that there may be no mistake or misapprehension as to the character of his holdings by either party. Where the trustee makes a conveyance of the trust property in

Larwill v. Burke.

breach of the trust, and his grantee continues to hold adversely, the statute applies so where the relation of trustee and *cestui que trust* is absolutely ended, whether by breach of the trust or otherwise.''

Angell on Limitations, sec. 174, says: ''Although it has invariably been maintained that the statute of limitations does not apply directly to trusts of the nature above considered, yet it has ever been as invariably maintained that if the trustee should deny the right of his *cestui que trust*, he abandons his fiduciary character and the *cestui que trust* must commence legal proceedings against him within six years thereafter.''

It is useless to quote authorities *in extense* upon this subject. They are very numerous and the holdings seem to be quite uniform throughout the courts of the different states and of the United States court; and they are to the effect that if the relation between the trustee and the *cestui que trust* is denied, is ended, is terminated, no matter what becomes of the funds, where it remains or where it goes, thereafter the trust relations ceases to the extent that the *cestui que trust* is called upon to proceed either at law or in equity to establish his rights, and such a proceeding under our statute is a civil action and is not subject to the exemption provided for in the statutes and unless the *cestui que trust* prosecutes his action within the time required by the statute of limitations, he is barred.

This doctrine is applicable to the petition. The facts averred in the petition are sufficient to show that the plaintiff demanded his rights as he claimed them to be. He was informed that he was not a *cestui que trust;* that he had no rights; that he had no interest in the fund—or words equivalent to these; and not having commenced any action within the time required by statute to establish his right to the fund, he is barred.

And it is our holding that the petition does not state facts to constitute a cause of action, hence the answer is good as against a demurrer under this petition, and the demurrer is overruled

The defendants, Lee and Hull, do not show in their cross-petition, that they have made any demand upon the directors or upon Burke and Hickox for any portion of this fund; and, as we have already said, until such demand the statute does not commence to run against them. They have never been denied any interest in this fund under any claim that they are not entitled to a portion of the sale. As to them, the statute of limitations has not commenced to run. Their cause of action was one upon demand, and their cross-petitions may be treated as such demand. As to them the demurrer is overruled, but only because it calls for the facts of the case in order to determine the question involved and not because their cross-petitions do not state a cause of action.

*Henderson & Quail; Dickey, Brewer & McGowan,* for plaintiff.

*Burke & Ingersolls* and *H. H. Poppleton,* for defendants.