In the Matter of the Estate of JOHN W. HAMERSLEY, Deceased.

Surrogate's Court, New York County, September 5, 1934.

*Emmet, Marvin & Martin [George W. Martin and Joseph K. Savage of counsel], for the executors and trustee.*

*Kenneth F. Simpson [Walter A. Peterson and James E. Bennet, Jr., of counsel], special guardian.*

DELEHANTY, S. In paragraph thirteenth of his will decedent provided: " With regard to the mode of investment of · the said Trust estates, I provide that it shall be lawful for my Executors or the Trust Company or other institution executing such trusts to continue any investment which I may have made or which may exist at my decease, and that they may make further or future investments of the trust shares or any portion of them according to their best judgment, and without responsibility (except for gross negligence or bad faith) in any of the following stocks or securities which may be approved by my executors for the time being (and which they my said executors may approve without other responsibility than last aforesaid) that is to say, in bonds or stocks of the Manhattan Gas Light Company, Pennsylvania Coal Company or any Railroad Company in which I may have any investments existing at the time of my decease, or in stocks of National or other Banks or Banking Companies, or in bonds of the Government of the United States or of the State or City of New York. And the said Trust Company or other institution exercising the said trusts may change such investments and securities when and as they and my executors may think necessary or expedient."

He named as his executors his son and two sons-in-law. All three either died or resigned before the falling in of the trust now accounted for and successor executors were named, one of whom also died, leaving now as executors an individual and a trust company. The latter is also the testamentary trustee. The account here filed is an account by the corporate trustee of its proceedings as such as well as an account by the individual and the corporate executor of their proceedings as executors.

The will in paragraph twelfth directs distribution by the trustee to the executors — not to the remaindermen — and prescribes for the executors the duty to make final distribution. This provision in the will was the subject of controversy (*Bank of New York & Trust Company* v. *Hamersley*, 210 App. Div. 57), and the court held that an active duty rested on the executors and that the express provisions of the will must be carried out.

Objections now filed by the special guardian representing two infant remaindermen raise questions which require consideration of the meaning and effect of the quoted and other clauses in the will.

Paragraph seventeenth provides a scheme for the naming of successor executors and contemplates that at all times there will be not less than three acting executors. The lack of this minimum number of executors at the time of the making of certain investments by the trustee is made the basis of objection. The lack of consent by the executors contemporaneously with or prior to the investment by the trustee in certain securities is also made ground for objection. The tenor of the quoted paragraph is cited in support of an objection to an investment in a mortgage participation. Such investment is also objected to because of claimed violation of section 111 of Decedent Estate Law. Objection is made likewise to the allocation between principal and income of extraordinary stock dividends upon certain securities held by the trustee.

The objection that less than three executors were acting requires only brief comment. The operations of the trust could not be suspended by reason of the death of one of three executors. The trustee would still be charged with the duty of investing the principal and would still be obliged to collect and pay over the income. In its capacity as trustee it had no power to take direct action for filling a vacancy in the board of executors. The trustee while it was itself an executor could in that capacity have initiated steps for increasing the number of executors. The trustee was also the property guardian of infant remaindermen and in that capacity could have applied to the court for the issuance of instructions to the remaining executors to increase their number as required by the will. The fact that it did not do so does not render illegal the investments made during the period when less than the prescribed number of executors were acting. Such investments are subject of course to scrutiny and may be subject to criticisms on grounds, if any exist, which would justify a surcharge for other reasons. The objections predicated solely on the lack of the minimum number of executors at the time of investment are overruled.

The special guardian argues that under paragraph thirteenth no investment might lawfully be made by the trustee in the stocks, bonds and securities specifically mentioned in the paragraph without the prior or contemporaneous approval of the executors " for the time being." The trustee argues that there was no limitation upon its right to invest in such securities, that it did not need to procure the contemporaneous or prior approval of such investments by the executors and that subsequent approval or ratification is enough. The court is of the view that the special guardian is correct in his interpretation of the paragraph. The plan of the testator is plain. He had named his son and his sons-in-law as his executors and apparently assumed that they would survive until the accounting by the trustee of all of the trusts. He intended they should have supervisory power over investments within the limited field stated in paragraph thirteenth. He intended that control to be exercised contemporaneously with the making of the investment. This is evident from his use of the phrase " executors for the time being " in this connection. He required the account of the trustee to be made to the executors and not to the remaindermen. In making this latter requirement he enabled the executors to discover and to object to any investment which they had not theretofore approved. By the quoted clause he gave to his trustee immunity from responsibility (except for gross negligence or bad faith) provided it obtained his executors' approval and he extended to his executors in giving their approval the same immunity as that given to his trustee. The plan was an entirely reasonable plan and would have functioned without difficulty had the originally named executors continued to act as such. The situation now is that the trustee is itself an executor and that associated with it is a co-executor who — the parties agree — is wholly without business experience. The purpose of the testator in having this double scrutiny of investments of the kind authorized under paragraph thirteenth has been defeated so far as its practical usefulness is concerned. The parties in interest as remaindermen should have appreciated this situation and have taken steps to correct it (assuming they thought correction desirable) when it first arose on the trustee's appointment as executor. Nevertheless it was the duty of the trustee to have sought approval of its co-executor before making investments of the class listed in the paragraph however lacking in practical usefulness her scrutiny would have been.

The trustee, claiming that an approval at any time after the purchase is sufficient, cites the approval by the co-executor of the account of the trustee now filed as complete satisfaction of the terms of the paragraph. With this position the court does not

agree. As stated, the trustee's duty was to obtain approval contemporaneously. Holding, therefore, that the trustee was at fault in not obtaining such approval the question remains whether the trustee for that reason alone may be surcharged and compelled to take over the securities not so approved. No claim of gross negligence or of bad faith is made against the trustee in the making of any investment. No claim of gross negligence or of bad faith is made against the executor who now approves the account of the trustee. The executor has made no objection to the account nor to the lack of her prior approval of any investment. In effect the individual executor says by failing to object that irrespective the impropriety of the making of any investment without her prior or contemporaneous approval she finds nothing to criricise in it. The executor is not charged with bad faith in reaching her determination not to object to the account. She might well determine in entire good faith not to make objection. There is no automatic incurring of surcharge for a non-approved investment merely by reason of the lack of contemporaneous approval. Though an executor might have the right to object to such an investment he might for various reasons determine not to do so. The investment, for instance, might have turned out profitably. It might have shown no loss. It might have shown no loss in excess of an amount which, in the executor's judgment, the estate would have lost if the investment had been made in conformity to the paragraph. If in good faith and for any of these reasons the executor determined not to object, his lack of action would not subject him to surcharge on his own accounting. This would be so, not because he is given by the will immunity in granting approval or because his tardy approval itself absolves the trustee, but because by the terms of the will the account of the trustee is to be made to the executor and the latter is necessarily clothed with reasonable discretion in determining whether to object or not.

This does not mean that if the trustee and an executor had connived in a wasteful or fraudulent use of the trust capital the remaindermen would be barred from objecting. On such a showing undoubtedly the court would permit them to intervene on the trustee's accounting and would hear their objections. In this instance the basis to such right of objection by the remaindermen is lacking and they are bound, so far as the trustee's account is concerned, by the failure of the executor to object. As before stated, nothing turns on the point that less than three executors are in office nor can any point now be made that one of the executors is itself the trustee and hence not likely to file objection to its own account in the latter capacity. For the reasons stated and in the

circumstances here disclosed all objections of the remaindermen predicated alone upon the failure of the trustee to procure the prior or contemporaneous approval by the executors of investments of the sort described in paragraph thirteenth must be overruled.

The special guardian earnestly urges that paragraph thirteenth, quoted above, limits the trustee to (a) investments made by deceased and continued by the trustee and (b) investments in the stocks and securities of the companies and governmental agencies only which are referred to in the paragraph. As to continuance of investments made by deceased in his lifetime there is and can be no controversy. The special guardian cites *Matter of Wotton* (59 App. Div. 584; affd., 167 N. Y. 629) as authority for his contention that this trustee was limited to government securities and mortgage investments. From the opinion in that case (p. 586) he quotes the following: " It has been settled in this State that a trustee holding funds for investment is bound to put them in government or real securities. (*King* v. *Talbot*, 40 N. Y. 76.) The rule laid down in that case has been enforced by the courts and trustees have been held to that form of investment except so far as the Legislature has from time to time authorized an investment by trustees in certain other specified securities." It is to be noted that the early limitation upon investments by trustees was a creature of judicial decision. These decisions were made necessarily in the light of conditions which confronted the courts and trustees at the times in respect of which the decisions speak. The rule as made was applicable to the conditions then existing. That the rule was not inflexible is evident from the excerpt cited by the special guardian, for the court there says that the rule is to be deemed modified " so far as the Legislature has from time to time authorized an investment by trustees in certain other specified securities." The vast increase in the wealth of the population of this country, the vast increase in the quantity of trust funds seeking investment, the vast increase in savings bank deposits and insurance funds which had to be invested, all led to the adoption of a legislative policy which classified as permissible investments which the courts in earlier days might not have approved as a matter of judicial discretion. The standard judicially fixed in the earlier days was not an inflexible standard. Quite the contrary. The earlier rule conformed to the earlier conditions. Even in the absence of statute any later judicial rule would presumably have conformed to the later conditions. It would be anomalous that a hard and fast limitation should be placed on trustees restricting them solely to investments authorized at the date of creation of the trust. No such rule was made by judicial decision and though this will is dated in 1878 the law of

today is applicable to the investments made today of the funds of the trust — unless specific directions are to be found in the will which unalterably prescribe the investments to be made.

Search of the text of this will discloses that the language of the testator was permissible in form and not directory. The special guardian insists that the word " may " where used by the testator in speaking of further investments should be read as " must." The court would be unwilling to adopt this interpretation unless otherwise the text of the will constrained it, but no such problem arises since the final .sentence of paragraph thirteenth makes it clear that the language is permissive only. That final sentence says: " And the said Trust Company or other institution exercising the said trusts may change such investments and securities when and as they and my executors may think necessary or expendient." The special guardian argues that the change there authorized is a change within the class theretofore prescribed, but the language is not susceptible of that narrow construction. The court holds that the trustees had the power to make investments in any securities authorized by statute effective at the date of the investment whether such statutory authorization was extant at the date of the will or not. It follows that the objections of the special guardian which questioned investments by the trustees in securities other than those of the kind listed in paragraph thirteenth must be and are overruled.

Objection is made by the special guardian to an investment of trust funds in a mortgage participation certificate having a face value of $40,000. The court is asked to direct the trustee to substitute cash in that sum and to take over the certificate in question. This certificate represents a share allocated to the trust in a whole mortgage purchased by the trustee. Practically coincident with such purchase, the ownership was distributed to various persons including this trust. The court has held that objections to this type of trust investment will not be sustained. (*Matter of Frazer,* 150 Misc. 43; *Matter of Mulford,* 149 id. 728; *Matter of Froelich,* 150 id. 371.) Further objection to this same investment is made on the score that it was improvidently made because the value of the property did not conform to the requirements of statute. Proof presented by the trustee satisfies the court that the necessary margin of value existed at the time of the making of the investment. Accordingly the objection of the special guardian in respect of this investment is overruled.

Objection is made to the allocation between principal and income of stock dividends. The rule is stated in *Matter of Osborne* (209 N. Y. 450, 477). The court there cited with approval *Clarkson* v. *Clarkson* (18 Barb. 646) which requires the separate treatment of

separate investments in a stock on which a stock dividend is declared. Here the trustee holds shares received from deceased and two lots purchased at different times during the trust administration. The position of the special guardian briefly is that the stock dividend on the entire number of shares held by the trustee should be used to make good any impairment of capital of all three investments in gross before any part of the stock dividend should be allocated to income. Under the rule of *Clarkson* v. *Clarkson* (*supra*) the trustee was required to deal separately with each investment. Under *Matter of Osborne* (*supra*) it was required to protect the capital value of the investment received by it from deceased; and it also had to keep intact the capital value of the investments made in the same stock by itself. Each investment comprised a fixed number of shares. The stock dividend was a dividend per share and consequently the dividend shares are attributable in ascertainable number to the ownership of the respective separate investments. The trustee was obliged to keep in the capital of each investment so much of the stock dividend thereon as would maintain the capital value of that investment and was required then to distribute the balance to the life tenant as income.

The trustee has applied the rule in *Matter of Osborne* (*supra*) by starting with the value of the deceased's investment at the time of his death and deducting from that value the proceeds of sales of rights to subscribe for further stock and a so-called equalizing cash dividend which was paid when the bank whose shares decedent owned was merged with another. This equalizing dividend seems in its nature to have been an adjustment of capital value only. In the case of its own investments in shares the trustee deducted the proceeds of the sales of rights to subscribe for further stock. It took the residue after these deductions as the net of the capital to be kept intact under the rule in *Matter of Osborne* (*supra*). The special guardian criticizes these deductions and the court is of opinion that the criticism is sound. The equalizing dividend referred to was accounted for as principal in a previous account. There is nothing to indicate that it should have been deducted from the cost of the investment. It represented an increment in the capital value of the original investment. The cases recognize that such increments increase the capital to be protected. (*Pratt* v. *Ladd*, 253 N. Y. 213, 219; *Matter of Hagen*, 262 id. 301, 305; *Thayer* v. *Burr*, 201 id. 155, 158.) The proceeds of the sale of rights equally belong to capital as increment. The value of these rights has no relation to dividends or income. It represents perhaps the value of control or of future speculative possibilities in the stock

or some other factor unrelated to earnings. The amount realized should be treated as an increment to principal (*Robertson* v. *de Brulatour*, 188 N. Y. 301, 315). In *Matter of Hagen* (*supra*) the court (p. 306) quoted with approval a statement in *United States Trust Co.* v. *Heye* (224 N. Y. 242) as follows: " While the corpus of the fund may not be depleted, yet the corpus may accumulate or increase, and until there is some division in the nature of a dividend payable out of accumulated earnings or profits, there is nothing that can be awarded as income to beneficiaries." The opinion then states that the profits from the sale of subscription rights are capital of the trust. If then the courts recognize an accumulation or increase of corpus and if they deny dividend participation except out of accumulated earnings or profits the capital to be protected under the rule in *Matter of Osborne* (*supra*) is the capital as increased by capital operations. It follows necessarily that the use of the equalizing dividend and of the proceeds of the sale of rights to reduce the amount remaining to be protected was erroneous. The objections of the special guardian in this respect are sustained and the distribution of the stock dividend will be recomputed in accordance herewith.

The final objection made by the special guardian is that excessive values have been ascribed to a bond and mortgage and to a mortgage participation certificate which are to be distributed by the trustee to the executors and that such excess will lead to the overpayment of commissions. The trustee concedes that actual value only must be the basis for computation of commissions. The actual present value is not in the record. If the parties cannot agree upon it the court will take proof thereon. Assuming that such value will be stipulated, a decree may, on notice, be presented settling the account in conformity with this decision.