In the Matter of the Accounting of CENTRAL HANOVER BANK AND TRUST COMPANY, as Trustee under the Will of MARY J. WESTERFIELD, Deceased, Appellant. WASHINGTON I. LEVY, Special Guardian for JOHN R. WESTERFIELD, JR., et al., Infants, Respondent.

First Department, April 3, 1951.

*Arthur W. Siegrist* of counsel (*Albert B. Maginnes and Frederic S. Nathan* with him on the brief; *Rathbone, Perry, Kelley & Drye*, attorneys), for appellant.

*Washington Irving Levy*, special guardian, respondent in person.

VAN VOORHIS, J. Central Hanover Bank and Trust Company, as trustee under the will of Mary J. Westerfield, appeals from portions of a Surrogate's decree which, in effect, require it to sell within a reasonable time testatrix' shares in North American Company, a public utility holding corporation, and shares in its subsidiaries which have been or will be distributed to stockholders of the parent company pursuant to an order by the Securities and Exchange Commission, which has been confirmed by the United States Supreme Court (*North American Co.* v. *Securities & Exchange Comm.*, 327 U. S. 686). The investments of this trust, mostly public utility stocks owned by testatrix when she died in 1907, have multiplied many times in value, and the trustee desires to continue them indefinitely for so long as may be expedient, unless it be required to sell at the first favorable opportunity. The only direction by testatrix with respect to investment of the trust funds is contained in a codicil, and reads: " I do not wish any of my securities sold." The Surrogate has ruled correctly that this direction to retain her securities is a command to the trustee, but is subject to an implied power of sale of any investment which changes in character to such a degree that it can no longer be regarded as being the same security within the contemplation of the will. A good deal of discussion has been engaged in by courts and text-writers in analyzing what makes a material change. This discussion is summarized in the opinion by the Surrogate citing the statement by BUCKLEY, J., from *Smith* v. *Lewis* ( [1902] 2 Ch. 667, 672) which was quoted in *Mertz* v. *Guaranty Trust Co.* (247 N. Y. 137, 141) that " ' Every case of this sort must be looked at on its merits in order to see whether the investment is the same.' "

It is difficult to formulate rules of general application covering this kind of situation. In determining whether there has been a change which would have been regarded by the testator as rendering inapplicable a direction to retain securities owned at death, the language and structure of the will must be considered as well as alterations in corporate organization, distribution, sale or exchange of vital corporate assets or the like. In this case it is unnecessary to decide whether distribution to stockholders of North American Company of its shares in subsidiary corporations would effect, under all circumstances, such an alteration that the holding by stockholders of shares in all of these companies could not be regarded as equivalent to ownership of shares in the parent corporation before distribution. The question is whether this testatrix would have thus regarded the situation as indicated by her will, bearing in mind that no testamentary authorization was given to reinvest in other than legals, and that if the securities of the North American group as changed by the Securities and Exchange Commission continue to be "my securities" as designated in the codicil of the will, the trustee would be mandated to retain shares of subsidiaries without power to sell them when and if it were to become expedient to do so. Testatrix saw fit to issue such a command in the case of her shares in North American Company, knowing that its subsidiary holdings and financial and business management were subject to control by its board of directors. She knew that North American Company could, at any time, sell any of its subsidiaries or acquire other operating companies or subsidiary holding companies, as the exigencies of business might require. Her will indicates that she had confidence in its management, and left such matters to its discretion. If her command to her trustee to retain her securities were extended to apply to the stock of North American's subsidiaries, however, the effect would be to prevent the trustee from selling any of the shares in the subsidiary corporations which North American Company had theretofore been free to sell.

North American Company itself is dismembered by the order of the Securities and Exchange Commission, and its stock alone cannot be regarded as the same security held by testatrix in view of the restricted scope of its permitted operations.

For the reason that testatrix did not contemplate that the shares in the subsidiary corporations, along with those of the dismembered parent corporation, would be frozen in the hands

of her trustee after execution of the Securities and Exchange Commission's order, it is held that the trustee is not compelled to retain them under the direction contained in the codicil, and that the shares in the North American group are therefore to be held or sold by the trustee in accordance with whatever powers are conferred upon the trustee by law.

The mandatory direction contained in the codicil compels the trustee to retain testatrix' shares in North American Company until the execution of the order of the Securities and Exchange Commission, from which the conclusion follows that the shares in the dismembered parent corporation and in its subsidiaries are received by the trustee pursuant to the terms of the will. It is provided by statute that no testamentary trustee, or other fiduciary as defined in the acts, '' shall be liable for any loss incurred with respect to any investment not eligible by law for the investment of trust funds, if such ineligible investment was received by such fiduciary pursuant to the terms of the will, deed, decree of court, or other instrument creating the fiduciary relationship or if such ineligible investment was eligible when received or when the investment was made by the fiduciary; provided such fiduciary exercises due care and prudence in the disposition or retention of any such ineligible investment '' (Personal Property Law, § 21, subd. 6, and Decedent Estate Law, § 111, subd. 6, both originally added by L. 1938, ch. 356; Decedent Estate Law, § 111, was repealed and the substance of subd. 6 thereof covered by Personal Property Law, § 21, subd. 6 by L. 1950, ch. 464). The Surrogate has held that this statute does not apply to the issue before the court, for the reason that there is no application to surcharge the trustee for loss caused by a breach of duty. In support of this ruling, it is stated in respondent's brief: '' In the first place, it should be noted that this subdivision [§ 21 subd. 6], unlike subd. 1, is not concerned with the authority of a trustee to invest funds. It deals solely with the question of the liability of a trustee.'' Although the language of the statute may be inartistic in this respect, we think that the Legislature did not intend to introduce a needless subtlety, which would be unrelated to the practical administration of trust estates. Ordinarily, if a trustee without authority acts to the detriment of the beneficiaries, it is liable for the consequences. This is analogous to the maxim that where there is a right there is also a remedy. An enactment that a trustee shall not be held liable for engaging in a course of conduct means, practically speaking, that the trustee is authorized to engage in such course of conduct. Otherwise the

contradiction would be involved that a trustee could not be held liable for doing something that it is not permitted to do by law.

That statute, first enacted in 1938, is not ambiguous, it authorizes the trustee to retain ineligible investments indefinitely, if received pursuant to the terms of the will, " provided such fiduciary exercises due care and prudence in the disposition or retention of any such ineligible investment." Only by interpolating language which is not in the statute can this provision be construed to require the trustee to sell investments within a reasonable time after being so received, limiting its discretion to deciding what constitutes the first favorable opportunity for a sale. This statute would have been unnecessary, if that had been the purpose, since, as is pointed out in the opinion of the Surrogate, such a power has been held to reside in fiduciaries independently of the statute and before its enactment (cf. *Costello* v. *Costello*, 209 N. Y. 252, 261). *Matter of Hoyt* (294 N. Y. 373, 382) although decided since the enactment of chapter 356 of the Laws of 1938, is not to the contrary, inasmuch as the will there exonerated the trustee from loss arising " through failure or omission to sell any of my property, real or personal, within what might be deemed a reasonable time." It was held that the trustee was required to sell within a reasonable time by direction of the will rather than as required by this statute. Upon the other hand, in *Matter of Clark* (257 N. Y. 132, 135) the will authorized the trustees to continue the testator's investments " without any personal liability for so doing ", and with no express direction to sell nonlegals within a reasonable time. The Court of Appeals held that no such direction was to be implied, and that there was no time limit to the disposal of the testator's nonlegal investments provided that the trustees exercised due care. Although that case was decided prior to the enactment by chapter 356 of the Laws of 1938 of subdivision 6 of section 111 of the Decedent Estate Law and section 21 of the Personal Property Law, the testamentary authorization involved therein was similar to the subsequent statutory authorization, which should be construed in the same way.

The traditional limitations upon investment of trust funds in New York State, except as otherwise authorized by the will or instrument creating the trust, stem largely from *King* v. *Talbot* (40 N. Y. 76, 85–86). The general principle of law stated in that case has often been followed, that " the trustee is bound to employ such diligence and such prudence in the

care and management, as in general, prudent men of discretion and intelligence in such matters, employ in their own like affairs ''. This does not mean that the same standards of financial judgment which were suitable when that case was decided in 1869, or even when '' legals '' were extended to include investments permitted to savings banks by chapter 295 of the Laws of 1902, are to be applied in 1951. A fiduciary whose informed judgment of investments has not kept pace with the times would be of small advantage to any beneficiary, which the Legislature has recognized by allowing somewhat greater scope to trustees in the management of trust estates. Surrogate DELEHANTY discussed this subject with force in *Matter of Hamersley* (152 Misc. 903, 908–909) concluding that '' the law of today is applicable to the investments made today of the funds of the trust — unless specific directions are to be found in the will which unalterably prescribe the investments to be made ''. In adopting chapter 356 of the Laws of 1938, and still further by chapter 464 of the Laws of 1950, the Legislature evidently considered that there should be some relaxation in the requirement that investments by trustees be determined by financial criteria prescribed by courts nearly a century ago. Testamentary trustees are permitted to hold otherwise ineligible investments which have been directed to be received by the will, or which were eligible when made, provided that due care and diligence is exercised in the supervision of such investments. Subdivision 6 of section 111 of the Decedent Estate Law and of section 21 of the Personal Property Law have been thus construed in *Matter of Flagg* (275 App. Div. 848) and by Special Term in *Matter of Loomis* (198 Misc. 221); *Central Hanover Bank & Trust Co.* v. *Coffin* (N. Y. L. J., June 29, 1948, p. 2415, col. 4); *Matter of Kirschenbaum* (N. Y. L. J., Sept. 14, 1946, p. 463, col. 1), and *Matter of Mott* (N. Y. L. J., March 30, 1946, p. 1261, col. 3). Although the authorization by chapter 464 of the Laws of 1950 is not invoked in this proceeding to invest up to 35% in preferred and common stocks, that is a notable illustration of a tendency on the part of the Legislature to impose greater responsibility upon trustees by allowing them more latitude in the exercise of judgment.

The decree appealed from should be modified so as to eliminate the determination that subdivision 6 of section 111 of the Decedent Estate Law has no application to the question presented by the petition, and so as to authorize the trustee in its discretion to retain as investments of the trust estate the stocks of the North American Company and its subsidiaries

as enumerated in the petition, pursuant to said statutory provision as now embodied in subdivision 6 of section 21 of the Personal Property Law, provided that it exercises due care and prudence in the disposition or retention of such investments. Costs should be awarded to all parties participating in this appeal payable out of the fund.

PECK, P. J., COHN, SHIENTAG and HEFFERNAN, JJ., concur.

Decree unanimously modified in accordance with the opinion herein and, as so modified, affirmed, with costs to all parties participating in this appeal payable out of the fund. Settle order on notice.