WILL OF YATES: FIRST WISCONSIN TRUST COMPANY, Trustee, Respondent, vs. PERELES, Guardian *ad litem,* and others, Appellants.

*May 7—June 15, 1951.*

264

*Nathan Pereles, Jr.,* of Milwaukee, guardian *ad litem,* for the appellants.

For the respondent there was a brief by *Shea & Hoyt,* attorneys, and *Ralph M. Hoyt* and *Hamilton T. Hoyt* of counsel, all of Milwaukee, and oral argument by *Ralph M. Hoyt* and *Hamilton T. Hoyt.*

MARTIN, J. Arthur W. Yates died September 25, 1930, leaving a will dated October 4, 1928, setting up a trust fund in excess of $15,000. The powers of the trustee with respect to investment of the funds of the trust estate are set forth as follows in article III of the will:

"*First*: To keep the trust estate well and safely invested during the term of the trust hereinafter stated. Full power and authority is hereby granted to the trustee to sell and dispose of the whole or any part of the trust estate at any time during the trust and to invest and reinvest the proceeds in accordance with its best judgment. The trustee is authorized in its discretion to continue the trust estate in the securities in which the same may be invested at the time of my death, but upon the sale of any such securities or in case any of them shall be paid when due, in reinvesting the proceeds the investment shall be made only in securities authorized by the laws of the state of Wisconsin for the investment of trust funds."

At the date of the will, sec. 231.32, Stats. 1927, prescribed the investments permitted to trustees. Prior to the testator's death, ch. 371, Laws of 1929, somewhat liberalized this section. Subsequent to the date of death of the testator, this section was renumbered as secs. 320.01 to 320.04, and these sections have been repeatedly amended. Ch. 205, Laws of 1949, creating sub. (17) of sec. 320.01, liberalized the trust-fund laws by permitting thirty-five per cent of the excess over $15,000 in any trust fund to be invested in investments au-

thorized by the statute regulating investments of domestic insurance companies.

The issue is whether the phrase "authorized by the laws of the state of Wisconsin" means the laws as of the date of the will, as of the date of the testator's death, or as of the date of investment.

The testator had confidence in the business ability of the trust company, as evidenced not only by his selecting it as his executor and trustee but by the words of article III of his will in the sentence preceding the one under construction, where he provided that the trustee should have full power and authority to "invest and reinvest the proceeds in accordance with its best judgment."

The deceased, when referring to "securities authorized by the laws of the state of Wisconsin" intended to limit his trustee to those securities that the legislature of the state of Wisconsin should from time to time designate as sufficiently safe for the investment of trust funds. As stated by the trial court in its decision:

"He used no words of limitation, limiting the investments to the law as it stood in any particular year. He did not speculate as to the year in which he would die; nor did he limit the investments according to the year in which he executed his will. He spoke as of the time of the investment."

This court held in *George Williams College v. Williams Bay* (1943), 242 Wis. 311, 316, 7 N. W. (2d) 891, that under the doctrine of "legislation by reference," when a statute adopts the general law on a given subject, the reference is construed to mean that the law is as it reads thereafter at any given time, including amendments subsequent to the time of adoption.

It is stated in 2 Scott, Trusts (1951 Supp.), p. 1224, sec. 227.13:

"The propriety of an investment is determined by the terms of the statute at the time when the investment is made and not at the time of the creation of the trust. *Application of Arms,* 193 Misc. 427, 81 N. Y. S. (2d) 246 (1948). In *City Bank Farmers Trust Co. v. Evans,* 255 App. Div. 135, 5 N. Y. S. (2d) 406 (1938), it was so held, although the trustee was directed by the will to invest in any securities 'that are now permitted by law to trustees.' But see *Cleveland Trust Co. v. Mansfield,* 34 Ohio Op. 26, 71 N. E. (2d) 287 (1945)."

See also *In re Hamersley's Estate* (1934), 152 Misc. 903, 274 N. Y. Supp. 303, 309, 310, in which it was held that where will setting up trust estate was dated 1878, trustee's investments in 1934 were not restricted to investments authorized by law in 1878, because law applicable to investment of trust funds was law of date of investment, unless trust contained specific directions unalterably prescribing investments to be made.

The *Cleveland Trust Co. Case* (p. 28), referred to above is relied upon by appellants. There the trust was *inter vivos.* The trustee was given the power of investment and reinvestment and it was provided that " 'all new investments to be made shall be of such character as are prescribed by law for the investment of trust funds by safe deposit and trust companies or in such other property or securities as may be taken with the written approval of the parties hereto, or of a majority of the beneficiaries of the trust for the time being, meaning thereby the majority of those who at the time of making the investment are entitled to receive income from the joint fund.' "

The court ruled that under this language the trustee would be limited to the law at the time the trust was created, because the settlors knew the law at that time. However, the settlor provided two distinct methods by which his trustee subsequently could be authorized to invest in "nonlegals"—one by the written approval of the settlors, and the other by the

approval of a majority of the beneficiaries of the trust. If construing the words "prescribed by law" as meaning the law at the creation of the trust was not what the settlors had intended, either they or the beneficiaries of the trust at any time could authorize investments in accordance with any subsequent amendment of the law. In the instant case the testator made no provision for anyone to authorize the trustee to invest in "nonlegals."

The Ohio court stated (p. 35) :

"There has been a material change in the law with respect to investments by trust companies since this agreement was prepared, and while it might be well argued that the parties anticipated this fact and that it was their intention to permit investment in any security which might at any time be authorized or permitted by statute, we are persuaded that this argument fails *in the light of the instructions contained in the instrument permitting investments in securities not within the statutory class if the parties or beneficiaries consented to such investments.*" (Italics ours.)

This contradicts appellants' statement that there is nothing in the decision to indicate that the court would have arrived at a different conclusion had there been no provision in the trust for authorization of broader investments.

The cases cited by appellants relating to the principle of deviation from the terms of the trust are irrelevant as that principle is not here involved. No useful purpose would be served in discussing these and other cases because they are not analogous.

The testator herein did not refer to the chapter or section of the statutes, as did the legislature in the *Williams College Case,* but merely used the general phrase "laws of the state of Wisconsin for the investment of trust funds." It is our opinion that the testator by referring to a certain law generally intended that law as a living thing; that is, as amended from time to time. By the clause of the will under construction, the testator stipulated that his trustee must reinvest the

proceeds realized from the sale or retirement of trust-fund securities in legally safe securities, and not that the trustee must invest in only those certain specified types of securities that the legislature had decreed were "legals" at the date of the will. The phrase "only in securities authorized by the laws of the state of Wisconsin for the investment of trust funds" means the laws of the state of Wisconsin at the time the investment is made.

The trial court, in holding in accordance with the above, properly decided this issue. However, respondent argues for a clarification of the rule of construing the judgment in will cases or construction of a will, and it is our opinion that in deciding this matter we must reverse the lower court. It had no jurisdiction to *construe* the Yates will. We appreciate that interpreting the phrase of the will in the instant case is therefore not necessary to our decision. However, all questions of the case were fully briefed and argued and, having been fully advised, we believe it best to do so—not as a precedent but in order to eliminate the necessity of further litigation to have the matter determined.

Respondent submits that an interested party is entitled to a construction of any portion of a will which hitherto has not been construed and that this right may be exercised at any time, even though it is too late to amend the judgment or appeal from it. Respondent argues that this must be true because if the law should prevent such tardy construction of the will ambiguities therein would be forever unclarified and the rights dependent upon them would be forever unestablished.

When the debts of the testator and the expenses of his funeral and the administration of his estate have been paid or provided for, the statute directs the county court by a judgment to assign the residue of his estate to the persons by law entitled to it. Sec. 318.06 (1), Stats. 1929–1949. Of course a post-judgment construction of a will is useless unless the

judgment is to be affected thereby, but if the judgment is thus subject to belated amendment or reversal every right which it purported to declare is rendered uncertain. There can be no finality to or reliance on a judgment if parties can have it altered from time to time through the device of applying for a construction of the will. And if the parties cannot have it so altered its construction after judgment is futile and so not to be entertained by the court.

Respondent's difficulty may arise from a too limited conception of the construction of a will. Before final judgment parties may have construction upon petition and notice as directed by sec. 310.11, Stats. The resulting construction may be appealed. *Estate of Bosse* (1944), 246 Wis. 252, 16 N. W. (2d) 832. If not appealed the construction becomes a final determination with which the county court must thereafter comply in its final judgment. *Estate of Greeneway* (1941), 236 Wis. 503, 295 N. W. 761; *Estate of Bosse, supra.* If appealed the interpretation is likewise fixed by the result of the appeal. By this procedure the intent of the testator may be determined in advance so that the final judgment may be consonant therewith; but it does not follow, if such proceedings are not had, that the testator's desire and purpose remains undetermined and a party's right to have it determined by this procedure remains in suspension, notwithstanding entry of final judgment, until he elects to set the process in motion. There is no great magic about the term *construction*. It means only a judicial ascertainment and declaration of the testator's intent. The judge has no right to remake or alter a will, with or without the consent of legatees. The testator's intent must govern, in so far as it is lawful and discoverable, and if the assignment of the estate, embodied in the final judgment, departs therefrom, it is reversible error. *Will of Schilling* (1931), 205 Wis. 259, 237 N. W. 122; *Estate of Goltz* (1931), 205 Wis. 590, 238 N. W. 374; *Will of Richter* (1934), 215 Wis. 108, 254 N. W. 103. The

judgment *is* the judicial declaration of the testator's intent. It *is* a construction of the will. "The court cannot assign the estate without construing the will." *Estate of Lyons* (1924), 183 Wis. 276, 279, 197 N. W. 710; *Estate of Garbade* (1925), 187 Wis. 105, 108, 203 N. W. 748; *Will of Brandstedter* (1929), 198 Wis. 457, 459, 224 N. W. 735.

Parties deeming themselves aggrieved by such construction and contending that the decree has not expressed the testator's intent may appeal, but when the statutory time for appeal has passed a party may not have the judgment changed by showing that the assignment of the estate appears to be in conflict with the terms of the will. *Will of Brandstedter, supra; Estate of White* (1950), 256 Wis. 467, 41 N. W. (2d) 776. The public and private necessity for the the stability of rights derived from judgments requires the judgments themselves to be stable and not subject to alteration as new meanings are read into old wills.

This principle does not in the least demand that ambiguities remain ambiguous and dependent rights remain uncertain. If the ambiguities appear in the final judgment they must, of course, be clarified and the judgment construed or interpreted so that parties asserting conflicting rights under it may be informed and those charged with a duty to act may be instructed. As with other documents, there is no room for construction when the meaning is clear and definite but when it is otherwise relief may be had. Thus a trustee can ask for instructions, a beneficiary can mandamus a trustee to act or enjoin him from action in accordance with the petitioner's interpretation of the judgment. We do not attempt to spell out every circumstance or procedure but only say that relief is available but it must be relief under the judgment instead of notwithstanding the judgment.

If the words of the will are repeated in the assignment clauses of the final judgment or incorporated there by reference, the court must have used them in the same sense the testator did because the judgment is the court's attempt·to

express and implement the testator's intent in the disposition of the estate and it evidently found no words more apt than the testator's own for the purpose. Then, if there is ambiguity, the facts and circumstances which are material to clarify the words of the court, so used, must be the same which would have been material to show the intent of the testator's use of them in a timely proceeding to construe the will.

We are told in argument that we are trying to distinguish between tweedledum and tweedledee. Indeed, it must appear so if one sees only that we allow construction of certain words if asked in one way but deny it if asked in another. We think the issue is greater than that and of more importance. If an effective construction of a will is to be had after judgment, the construction must be carried into the judgment no matter how the judgment is affected thereby. Thus the time when a judgment can no longer be amended or reversed comes only when resourceful counsel can no longer invent controversies over the supposed intent of the testator as expressed in his will. The effect of such a rule upon titles to real estate and the marketability of the assets of an estate need not be dwelt upon. We refuse to sanction it. The final judgment must be recognized as a judicial determination and expression of the intent of the testator. When the time to appeal has gone by, if the language of the judgment is plain and unambiguous and its meaning clear and definite, no resort to the will or the circumstances of its making may be had. On the other hand, when the language of the judgment is ambiguous and its meaning obscure the sense in which the trial court meant its language to be understood may be ascertained by an examination of evidentiary facts, among which may be the language adopted by the testator and the circumstances surrounding its adoption.

Instructions may always be requested for proper means to carry out the judgment entered. In the instant case a peti-

tion for *instructions* as to the legality of the proposed invest-ments under the judgment would be available to the parties.

*By the Court.*—Judgment reversed, and cause remanded with instructions to dismiss the petition for a construction of the will.

FAIRCHILD, J. (*concurring*). I concur in the result in this case. For my reasons see my dissenting opinion in *Estate of Fritsch,* post, p. 295, 48 N. W. (2d) 606.