In the Matter of the Accounting of BANK OF NEW YORK AND FIFTH AVENUE BANK, as Trustee under the Will of CORNELIA PRIME, Deceased.

Surrogate's Court, Suffolk County, September 15, 1951.

*Emmet, Marvin & Martin* for trustee, petitioner.

*Munder, Weissman & Lockwood* for Huntington Hospital.

HAZLETON, S. Among the philanthropies established by the last will and testament of the late Cornelia Prime is a trust fund of $100,000 for the benefit of Huntington Hospital, which is administered by the petitioner, Bank of New York and Fifth Avenue Bank, as trustee.

Between the time of the death of deceased and the present, the statutes controlling investments of corporate fiduciaries have changed, as have our economy and social life. Prior to July 1, 1950, the law clearly authorized the investments made by the petitioner in units of its legal common trust fund. (Decedent Estate Law, § 111; Banking Law, § 100-c; *Matter of Peck*, 198 Misc. 395.) Chapter 464 of the Laws of 1950 (eff. July 1, 1950) substantially changed the scope of investments for trusts including legal common trust funds. Before this date a legal common trust fund was restricted to investing in securities legal for savings banks (L. 1937, ch. 687; L. 1943, ch. 602). After July 1, 1950, the field of investment for a legal common trust fund was liberalized and widened so that the common fund might be invested " in the manner in which fiduciaries are authorized to invest by section twenty-one of the personal property law." (L. 1950, ch. 464.)

Paragraphs (a) to (*l*) of subdivision 1 of section 21 of the Personal Property Law, as amended by chapter 464 of the Laws of 1950, enumerate the kinds and classes of securities in which trustees may invest. These are the traditional " legals " for investment by fiduciaries. Paragraph (m) of subdivision 1, as amended by chapter 464 of the Laws of 1950, is a distinct innovation in legislative control of fiduciary investments. It permits fiduciaries to invest in corporate securities, including common and preferred stocks, in addition to the securities made eligible for investment by paragraphs (a) to (*l*) of said subdivision 1. However, certain restrictions are imposed in paragraph (m) on investments made thereunder. One of the limitations is that " no investment shall be made pursuant to the provisions of this paragraph (m) which, at the time such investment shall be made, will cause the aggregate market value of the investments not made eligible by the preceding paragraphs of this subdivision to exceed thirty-five per cent of the aggregate market value at that time of all of the property of the fund held by such fiduciary ".

In the case at bar more than 35% of the Huntington Hospital trust fund is now invested in part interests in bonds and mortgages. These investments were originally made pursuant to subdivision 7 of former section 188 of the Banking Law. The trustee has retained them pursuant to the authority of section 100-b of the Banking Law. These are not securities made eligible for investment under paragraphs (a) to (*l*) of subdivision 1 of section 21 of the Personal Property Law. Hence the (a) to (*l*) securities plus cash in the Huntington Hospital fund are less than 65% of its total. Accordingly, the trustee is in no legal position to invest any part of its fund in (m) securities. Instead, it has invested part of the trust fund in its legal common trust fund, and it intends to make additional investments in its common trust fund depending on the outcome of this proceeding.

The will under which this trust is administered does not grant the trustee discretionary powers of investment; nor does it prohibit investment in a legal common trust fund. Hence, the question to be determined herein is whether the petitioner is authorized under the modified '' Prudent-Man '' rule which became effective in this State on July 1, 1950, as amended by chapter 627 of the Laws of 1951, to retain the investments it has already made, and to make additional investments, in units of participation in its legal common trust fund, despite the fact that more than 35% of the Huntington Hospital trust fund is now invested in mortgage part interests which are not eligible investments under paragraphs (a) to (*l*) of subdivision 1 of section 21 of the Personal Property Law.

A similar situation was before Surrogate COLLINS in *Matter of Peck* (199 Misc. 1051) decided December 6, 1950, before the adoption of the 1951 amendment. There the court held (p. 1058) that an investment in a share of a legal common trust fund was '' not made eligible '' by paragraphs (a) to (*l*) of subdivision 1 of section 21 of the Personal Property Law, but by subdivision 3 of section 100-c of the Banking Law, and that the value thereof must, therefore, be included in the total value of the investments comprising the 35% category. Thus, in an estate of $100,000 with $25,000 already invested in a legal common trust fund, only $10,000 may be invested in nonlegals ($35,000 less $25,000). In holding thus the court reasoned as follows (p. 1057): '' The recent amendment to the Personal Property Law has broadened the investment powers of fiduciaries but it cannot be construed as an abandonment of long-established policy. The statute must be construed as granting only the additional investment powers

that are explicit in the language of the amendment. The amendment plainly states both the limitation on the purchase of corporate securities and the method of its application. It permits the investments described in paragraph (m) to be made only on the clearly expressed condition that at such time the total value of all investments that are not ' made eligible ' for investment by paragraphs (a) to (*l*) inclusive of subdivision 1 of the statute shall not exceed in value 35% of the value of the trust fund. The statute does not say that, if 65% of the trust fund is invested in the ' legals ', the remaining 35% of the fund may be invested in the corporate securities described in paragraph (m). The permission granted by the statute is that such corporate securities may be purchased only if the value of such newly purchased securities when added to the value of other investments not made eligible by the statute (whether or not such other investments are legal investments) will comprise a sum total not in excess of 35% of the entire trust fund.''

The Legislature thereafter amended paragraph (m) by chapter 627 of the Laws of 1951, effective April 7, 1951. It added several words at the end of said paragraph and thereby made clear its new policy governing trust investments. The last sentence of paragraph (m), the language added by the 1951 amendment being in italics, now reads as follows: '' In determining the aggregate market value of the property of a fund and the percentage of a fund to be invested under the provisions of this paragraph, a fiduciary (i) may rely upon published market quotations as to those investments for which such quotations are available, and upon such valuations of other investments as in his best judgment seem fair and reasonable according to available information, *and (ii) shall exclude the value of any investment in a legal common trust fund made pursuant to the banking law.*''

The 1951 amendment changes the result arrived at by Surrogate COLLINS in the *Peck* case (199 Misc. 1051, *supra*). Under the amendment, a fiduciary, in determining the market value in a fund and the percentage of a fund to be invested under paragraph (m), is required to '' exclude the value of any investment in a legal common trust fund made pursuant to the banking law.''

A change of language by the Legislature immediately after a judicial decision is entitled to great weight in determining the future status of the law. (McKinney's Cons. Laws of N. Y., Book 1, Statutes [1942 ed.], § 75; *Matter of Zabriski* v. *Law*, 118 Misc. 471, affd. 203 App. Div. 40.)

A material change in the phraseology of an act is generally regarded as a legislative construction that the law so amended did not originally embrace the amended provisions. (McKinney's Cons. Laws of N. Y., Book 1, Statutes [1942 ed.], § 193; *People ex rel. Westchester Fire Ins. Co.* v. *Davenport,* 91 N. Y. 574, affg. 25 Hun 630.)

The purpose of the 1951 amendment was to resolve the problem presented to Surrogate COLLINS in *Matter of Peck* (199 Misc. 1051, *supra*) and to make certain in clear language the legislative intent anent investments by corporate fiduciaries in legal common trust funds. (Memorandum by Hon. Justin C. Morgan, chairman of Assembly Judiciary Committee, who introduced the bill, New York State Bar Bulletin, June, 1951, p. 218.) While the latter writings are not binding on this court, they shed light on the intent behind the amendment. Regardless of the foregoing, the language of the amendment is both clear of meaning and convincing as to purpose. The Legislature has now declared in unmistakable language that (m) securities are not to be confounded with units of participation in a legal common trust fund and that each is separate and distinct from and should not affect the other.

This action taken by the Legislature is in trend with today's tendency to liberalize fiduciary investments and faces the fact that the life of the traditional so-called legal trust is on the ebb. Such is not strange since the legal trust was conceived when our economy was far different from that of now. This court takes notice that to date thirty-six States have already passed common trust fund enabling laws. This widespread acceptance of common trust funds is because experience has demonstrated that common trust funds are the only practical means of providing small- to medium-sized trusts such as the one under consideration with broad investment diversification. This diversification is the best assurance that beneficiaries have of obtaining a stable income. It is the most effective trust device for providing both beneficiaries and remaindermen with reasonable protection against changes in the purchasing power of the dollar. Therefore this sound and sensible means of investment thus provided for trusts of moderate proportions should be encouraged and helped rather than discouraged and hindered. Hence the Legislature has precisely prescribed the limitations within which this can be accomplished.

Accordingly, I hold that although the petitioner is now retaining in the Huntington Hospital trust fund mortgage part interests, the value of which exceeds 35% of the entire trust fund,

nevertheless it may retain in its portfolio the units of partici-
pation in its legal common trust fund it has heretofore purchased
and it may, in addition, make further investments in its legal
common trust fund within the limited amount prescribed by
the Banking Law provided such investments are made with
prudence.

Submit decree on notice in accordance with this decision.