In the Matter of the Accounting of LINCOLN ROCHESTER TRUST COMPANY, as Trustee of Its Discretionary Common Trust Fund 1.

Surrogate's Court, Monroe County, February 27, 1952.

*Raymond F. Allen* and *Alfred W. Dunbar* for trustee, petitioner.

*Joseph M. Feely,* special guardian for parties interested in the income of the common trust fund and participating trusts, respondent.

*Edward M. Ogden,* special guardian for parties interested in the principal of the common trust fund and participating trusts, respondent.

WITMER, S. Petitioner has filed its first account as trustee of its Discretionary Common Trust Fund No. 1, established on February 1, 1950, under section 100-c of the Banking Law, and seeks approval thereof. The special guardian of persons interested in the income involved has reported his approval of the account insofar as the income is concerned, and he recommends that it be settled as filed. The special guardian of persons interested in the principal has filed extensive objections to the account directed to the constitutionality of the statute under which the fund was created, and directed to the plan of operation filed by petitioner upon creating the fund under the statute, the acts of the trustee in administering the fund, and the documents filed and omitted to be filed by peti-

tioner in connection with this proceeding; and the objections have been fully briefed. The objections were filed in two instruments, one supplementing the first; they are grouped under headings, and are numbered from "1" under each heading. For convenience of reference the court has renumbered the objections by placing new numbers in the margin thereof beginning with the second group to make consecutive numbers throughout, and the references herein to objection numbers are to the objections as thus renumbered.

The objections (6, 20, 21, 23–25 & 27) to the constitutionality of the statute (Banking Law, § 100-c) under which the common trust fund was created will first be considered. It is contended that because subdivision 9 of said section does not require that notice of intention to invest moneys of prospective participating trusts in the common trust fund be given to infants and incompetents and to other persons whose names and addresses have not come to the knowledge of the trustee, it amounts as to such persons to an authorization of a taking of property without due process of law; and that it also amounts to authorization of such a taking as to all other persons, because the notice is only required "at the time of making the first investment" instead of at a reasonable time before making such investment, and no opportunity to be heard is granted in respect thereof. It is claimed (objection 20) that the right to commingle the underlying trust moneys in the common trust fund "as if the absolute owner thereof" and the delays permitted with respect to withdrawal thereof (subd. 8), and the three-year periods (subd. 10) between accountings after the first one, amount to an authorization of self-dealing and of taking property without due process of law; that (objection 21) the statute authorizes the corporate trustee to deprive the cotrustees of the right to participate in the decisions as to whether the funds shall be invested in the common trust fund, and deprives them of the free exercise of discretion in the investment of the trust funds and (objection 27) in the withdrawal of trust principal for the use of beneficiaries in the cases, being a majority, wherein such discretion is granted to the trustees. It is further asserted (objection 25) that as to trusts created prior to the effective date of the law authorizing common trust funds, it is unconstitutional because it amounts to an impairment of established contract rights.

The special guardian of principal views with alarm the liberality of the statute with respect to its authorization of commingling and management of trust funds and the provisions

for accounting therefor, and urges that the law has broken loose from established moorings and safeguards respecting trust funds. Of course, the courts cannot concern themselves with the policy or wisdom of the statute, but only, in this connection, with its constitutionality; although as a preface to an earlier decision respecting this statute prior to its amendment, this court found it advisable to indicate its approval of the principle of common trust funds. (*Matter of Security Trust Co. of Rochester,* 189 Misc. 748, 752, affd. 277 App. Div. 837.)

It has long been held a breach of trust for a trustee to commingle trust funds with his or its own funds (Surrogate's Ct. Act, § 231; 2 Scott on Trusts, § 179.1), and generally it has been held improper for a trustee to commingle funds of one trust with those of another in his charge. (2 Scott on Trusts, § 179.2.) But such rule is a matter of policy, and not of constitutionality, and in appropriate cases commingling of funds of one trust with those of another has been approved by our courts. (*Matter of Union Trust Co.* [*Hoffman Estate*], 219 N. Y. 514; *Barry* v. *Lambert,* 98 N. Y. 300; *Chesterman* v. *Eyland,* 81 N. Y. 398; *Matter of Flint,* 240 App. Div. 217, affd. 266 N. Y. 607.) Thus the Legislature has the power to authorize commingling of trust funds provided the statute does not provide for the taking of property without due process of law.

The fact that the statute authorizes the trustee to commingle trust funds without notice does not go to its constitutionality. As pointed out in *Matter of Security Trust Co. of Rochester* (189 Misc. 748, 767–769, *supra*) the notice was provided as a stated protective device for the trustee to estop the beneficiaries receiving it and the benefits of the investments made in accordance therewith from later objecting to such investments. The statute recognizes that in most cases infants and incompetents and unknowns would be unable to come forward to object after the mailing of the notice, and hence makes no provision for protecting the trustee as against such persons until the judicial settlement of the common trust fund account.

The language of subdivision 8 of the statute, to wit, " as if the absolute owner thereof " is plainly limited to " powers of management " (and see subd. 2), and in no way deprives the *cestuis que trustent* of their essential equitable rights nor grants to the trustee more than fiduciary rights in the assets.

The claim that the statute permits self-dealing, it seems to the court, goes largely to a matter of policy, not of constitutionality, but at any rate it is unfounded in view of subdivision 4 of the statute and the construction placed thereon in *Mullane*

v. *Central Hanover Tr. Co.* (339 U. S. 306, 309) to wit, '' The trust company must keep fund assets separate from its own, and in its fiduciary capacity may not deal with itself or any affiliate.'' (And see *Matter of Bank of New York,* 189 Misc. 459, 463.) The failure to require so-called '' documentary '' evidence of investments and transfers (objection 7) and of other notices thereof may affect the opportunity for self-dealing but do not amount to authorization thereof. They are regulatory matters only, and do not render the statute unconstitutional. The claim that self-interest will cause the trustee to pour all funds of small trusts into the common trust fund, so far as possible, may be true. Such seems to be the purpose of the statute. Insofar as operating costs are reduced, it is possible that the trustee may gain by a reduction of its own expenses, but the fund will gain also. If the fund produces a better return, the trustee will gain only insofar as it receives commissions on income in the underlying trusts (subd. 4), and reasonably high income upon diversified investments is certainly not to be condemned. The provision for a stated period of time between a decision to withdraw funds from the common trust fund and the time of actual withdrawal is for the protection of the beneficiaries and deprives no one of substantial rights. It is proper, regulatory legislation. (*Veix* v. *Sixth Ward Assn.,* 310 U. S. 32.) The same is true with respect to the provisions for triennial accountings.

Subdivision 1 of the statute (Banking Law, § 100-c) as reasonably and necessarily construed (see 2 Scott on Trusts, § 194), requires the consent of the cotrustee to the investment of funds of the underlying trust into the common trust fund. He must continue to exercise his proper discretion in all respects concerning the trust, except that as to assets participating in the common trust fund he is deprived of all title, custody, investment and managerial rights and obligations. The shares in the common trust fund evidencing the participation take the place of the invested assets of the underlying trust therein. His investment discretion in respect thereof is limited to deciding whether or not to withdraw the same (subd. 5), within the general provisions of the statute. It is true that this is a departure from previous trust practice, but changing times have indicated the need and wisdom thereof, and none can question the power of the Legislature to make the change. (See *Mullane* v. *Central Hanover Tr. Co.,* 339 U. S. 306–308, *supra* and *Matter of Prime,* 200 Misc. 410, 414.)

Nor can it be said, as argued by said special guardian in

his brief, that the statute is unconstitutional as discriminatory because it authorizes only corporate trustees to create common trust funds. Legislation is generally practical, dealing with existing and anticipated needs. There is no evidence that any individual is trustee of many trusts and seeks authority to establish a common trust fund. Indeed, the improbability of individuals becoming trustees of many trusts and seeking this authority, in view of the expense of bonds, the limits on human life and other practical considerations, is sufficient justification for the Legislature to see no need for extending the statute in this respect. The statute is not unconstitutional because it does not apply to all persons, inasmuch as it does apply equally to all persons (corporations) known to be handling multiple trusts, wherein lie the problems sought to be solved in part by the legislation. (*Denver* v. *New York Trust Co.*, 229 U. S. 123, 142; *Patsone* v. *Pennsylvania*, 232 U. S. 138, 144; *Miller* v. *Wilson*, 236 U. S. 373; *Silver* v. *Silver*, 280 U. S. 117; *Metropolitan Co.* v. *Brownell*, 294 U. S. 580, 584–586; *Railway Express* v. *New York*, 336 U. S. 106; and cf. *Queenside Hills Co.* v. *Saxl*, 328 U. S. 80, 82–84.) It may also be said that no individual trustee against whom the statute is claimed to discriminate is a party to this proceeding and objecting herein, and neither special guardian herein represents any such trustee. Hence, the objection may not properly be made in this proceeding. (*Darnell* v. *Indiana*, 226 U. S. 390, 398.)

The objection (25) that the statute is unconstitutional insofar as it authorizes funds of trusts created before the enactment of the statute to be invested in common trust funds, on the ground that it authorizes impairment of contracts, likewise must fail (see *Veix* v. *Sixth Ward Assn.*, 310 U. S. 32, *supra*). It is settled law that what constitute proper investments for trust funds is determined by the law in effect when the investment is made (*Matter of Hamersley*, 152 Misc. 903; *Matter of Westerfield*, 278 App. Div. 153), and this very objection in a like case has been held to be invalid. (*Matter of Hoaglund* 194 Misc. 803, affd. 272 App. Div. 1040, affd. 297 N. Y. 920.) The latter case, at page 811, is also controlling authority for dismissal of items A, B, C, D & E of objection 26, the holding being that participating shares in common trust funds constitute " securities " in which funds of a trust may be invested. Said decision also removes all doubt as to the jurisdiction of this court over judicial settlement proceedings of common trust funds which contain *inter vivos* trust funds. (Cf. *Matter*

*of Security Trust Co. of Rochester,* 189 Misc. 748, 752–757, *supra,* overruled in this respect by *Matter of Hoaglund, supra.*)

Objection is made that the plan of operation violates the statute in various respects (objections 7–15). Reference has already been made to objection 7 regarding lack of documentation of participations in the common trust fund. The other objections in this group question (objection 8) the exclusion of assets transferred to a liquidating account (Plan of Operation art. III, § 2) for purposes of subsequent admissions or withdrawals; (objection 9) the limitation upon withdrawals if less than 40% of the value of the remaining assets are composed of cash and *readily* marketable securities (Plan, art. III, § 5); (objection 10) the provisions for denying withdrawals if the fund contains ineligible investments not transferred to a liquidating account (Plan, art. III, § 6); (objection 11) the delegation of authority to the, trust committee to operate the fund (art. IV, § 3; art. VI, § 1); (objection 12) the provision that " five *business* days " (Plan, art. III, § 3) after notice of withdrawal must elapse before the time of the actual withdrawal of funds, whereas the statute (subd. 6) provides for " at least five days ", resulting, it is claimed, in unlawful delay, particularly in view of the five-day week; (objection 14) provision in article XIII of the plan for notices; (objection 15) provision in article XV of the plan permitting amendments thereof on notice only to persons entitled thereto under subdivision 9 of the statute regarding notice of first investment.

It seems to the court that these objections relate to the reasonableness of the plan of operation under the statute, rather than to its legality. Under the powers granted by the statute to the banking board to regulate the conduct of common trust funds created thereunder it cannot be said that such board lacked authority to permit the petitioner to establish the present fund with provisions for its operation as stated in the filed plan of operation, except with respect to the last paragraph of article X of the plan, to which objection 13 relates. The provision is: " The compensation and expenses of the auditors, other than auditors who are regular employees of the Trust Company, for the audit of the Common Fund and any liquidating account, and the cost of printing and other proper charges in relation to such audit, shall be chargeable against and payable out of the principal of the Common Fund when incurred."

The audit referred to in said quotation is to be made at least annually, and under the other terms of the plan a copy

of it must be sent to each cotrustee and each person " to whom a regular periodic accounting of the participants in the Common Fund would ordinarily be rendered or shall send advice to each such person, annually, that the report is available " etc. The last sentence of subdivision 4 of the statute reads as follows: " A common trust fund shall not be deemed a separate trust fund on which commissions or other compensation is allowable and no trust company maintaining such a fund shall make any charge against such fund for the management thereof." (Banking Law, § 100-c, subd. 4.) The trustee herein has in fact made no such charge, and so the question relates solely to the validity of the provision in the plan. Although the expenses of this judicial settlement proceeding are clearly chargeable to the fund, to wit, against the principal thereof (*Matter of Bank of New York,* 189 Misc. 459, 463, *supra; Matter of Continental Bank & Trust Co. of New York,* 189 Misc. 795), the expenses referred to in the paragraph of article X of the plan of operation, above quoted, do not relate to the judicial settlement proceeding and are held to be part of the management costs. The provision, therefore, contravenes the statute.

In objection 16 it is asserted that the affidavit of mailing of notices, in compliance with paragraph (1) of subdivision 12 of the statute is defective because it states a conclusion of law rather than the facts of the mailing. The affidavit incorporates by reference the names and addresses appearing on the list required to be filed by subdivision 12 of the statute, and which list was in fact duly filed herein. The objection is, therefore, without merit. Objection 5 also relates to said list, the objection being that it fails to show the nature of the interests of the persons named and the classification of paragraph (1) of subdivision 12 in which they fall. The statute does not require such showing. Although such information might save time for the trustee and the special guardians upon the accounting, it is within the discretion of the trustee whether to insert it in the list. The objection (17) that the publication was defective because of a printer's error in the name " Hardenbrook ", it having been misspelled as " Hardenbreek ", is likewise rejected, particularly since in the same clause the same family name is correctly printed. Objection 18, that the permission of the banking board to the trustee to establish the fund, and the authorization of the Board of Governors of the Federal Reserve System and of the banking board authorizing investments in the sum of $50,000 have not

been filed, is likewise dismissed as not required. The certification made by the banking board pursuant to subdivision 13 of the statute is surely sufficient evidence that the fund has the approval of that board. The further objection contained in number 18 that there is no affidavit filed on behalf of the trustee showing that the trustee has complied with subdivision 4 of the statute and has made no investment amounting to self-dealing, etc., was well taken, but the affidavit has since been filed. Objection 19, that the trustee has filed no affidavit concerning its mailing of notices of the first investment under subdivision 9 of the statute is rejected because such notice is not jurisdictional, as hereinbefore discussed.

Objection is also made to the trustee's conduct of the fund. Objection 1, relates to an original investment by a participating trust in the sum of $49,968.78, which at the date of the account exceeds the value of $50,000. The question raised is academic since the amendment of subdivision 1 of the statute has increased the limitation on participations to the sum of $100,000. (L. 1951, ch. 215.) Nevertheless, a fair and just interpretation of the provision must fix the time of valuation at the date of the investment, and not require withdrawal in whole or in part solely by reason of a mere increment in capital value. Objections 2, 3 and 4 involve underlying wills under which in each case more than one trust was created in amounts less than $50,000, but which aggregated more than $50,000, and all of such trusts have participated in the common trust fund. The point is that the remainders of the trusts may cause the assets later to be held for one beneficiary. The " presently payable " test has been adopted by the banking board, and has received judicial approval to which this court subscribes. (*Matter of Bank of New York, supra; Matter of Continental Bank & Trust Co. of New York, supra.*)

Objection (22) is made to the trustee's use of a nominee in its security transactions. In respect of all of the funds in the participating trusts the trustee is authorized under section 25 of the Personal Property Law, or section 231 of the Surrogate's Court Act, to use a nominee as it has done herein. One of the principal purposes of the common trust fund was to afford greater economy and efficiency in management of the smaller trust funds. The purpose of the statute and a fair reading thereof require a holding that the common trust fund constitutes an express trust within the meaning of section 25 of the Personal Property Law, and that the objection to the trustee's use of a nominee is unfounded.

In objection 26, item F, the special guardian for principal charged that the trustee of an *inter vivos* trust created by William F. Schreck, the investment authority in which since his death is limited to that contained in his will, was given no power to invest in nonlegals, and hence it had no authority to invest its funds in the discretionary common trust fund herein. Since such objection was made the petitioning trustee has withdrawn the funds of said Schreck trust from the common trust fund, with a resulting capital gain to the Schreck trust. Hence the objection is now academic.

By objection 26, item G, the special guardian for principal charged that with respect to the participating Garfield trust the notices of judicial settlement were mailed only to the beneficiaries of the trust in care of the petitioning trustee instead of directly to said beneficiaries. Petitioner shows that under item 86 of the list filed herein pursuant to subdivision 12 of the statute it appears that the notices were in fact mailed directly to the beneficiaries, and so this objection falls.

Although the petitioner made available for the examination of the special guardians its records concerning the participating trusts, and has readily met or complied with the only objections (26, A through F) concerning the propriety of the participations within the limits of the instruments creating the trusts involved therein, its counsel has suggested that such questions were not properly before the court in this proceeding. (*Matter of Bank of New York,* 189 Misc. 459, 469, *supra.*) Subdivision 3 of the statute specifies the factors which determine what trust funds a corporate trustee may invest in its respective common trust funds. Subdivision 14 of the statute provides that the decree to be entered herein shall be " binding and conclusive in respect of any matter embraced in the account or in such decree in all courts ". The petitioner made no attempt in its petition or account to show the particular authority in each instrument creating the participating trusts under which the investment in the common trust fund was made, and it does not appear that it seeks an adjudication as to its right under those instruments to make such investments. If the decree entered hereon is also silent on that issue, it seems apparent that it will in no way bar the beneficiaries on accountings in the underlying trusts from having such issue determined. (See Butler on New York Surrogate Law & Practice, Vol. 1A, § 753 and cases cited, and Banking Law, § 100-c [14].) It is true that if the court were to entertain in this common trust fund accounting requests to determine the many issues

which might exist between the beneficiaries of each underlying trust and the trustee concerning such respective trusts only, the proceeding might become unduly burdensome. Some of such issues, however, may conceivably be of sufficient importance in the operation of the common trust fund and the court's approval thereof as to warrant the court entertaining them for determination, in its discretion.

As a matter of the court's discretion the right of the trustee to cause the funds of an underlying trust to be invested in the common trust fund, it seems to me, may constitute such proper issue, if raised. Ordinarily the legal question raised therein is not difficult. It would seem to be desirable on the part of the trustee to have the matter put at rest; and it would also seem that if there has been an error made, it should be corrected as soon as possible. This would be especially true if a beneficiary should appear in person and raise such question. He should not be relegated to another proceeding, unless the court believes that the issue is one that will unduly interfere with the ready settlement of the common trust fund account.

Insofar as such questions are not raised or entertained by the court, as stated above the beneficiaries will not be barred from raising them in the judicial settlement proceedings in the underlying trusts. (See, also, *Matter of Bank of New York,* 189 Misc. 459, 469–470, *supra*). But insofar as those questions are raised and determined in this proceeding, the adjudication will be conclusive on all parties. (Banking Law, § 100-c, subd. 14.) The court determines in its discretion that under the statute it was proper for such questions to be raised herein.

Moreover, as a practical matter it has been demonstrated in this proceeding that it is of value to have the special guardians examine the underlying instruments of the trusts which have joined the fund since the previous account. The practice is not unduly burdensome, it permits an early correction of any errors, and is most likely to avoid unpleasant surcharge questions later.

Submit decree dismissing all of the objections to the account and approving the account as filed, the decree, of course, to contain no provision contrary to the court's observations above made with respect to objections 13, 18 and 26.