In the Matter of the Accounting of SYRACUSE TRUST COMPANY, as Trustee under the Trust Agreement Made by WILBERT L. SMITH, as Settlor, Respondent. N. EARLE EVANS, JR., as Guardian ad Litem for Infant and Unknown Remaindermen, Appellant.

Fourth Department, March 21, 1958.

394

*N. Earle Evans, Jr.,* as guardian ad litem, appellant.

*John E. Morrissey, Jr.,* for respondent.

BASTOW, J. In this proceeding for the settlement of an intermediate account of the trustee under an *inter vivos* trust the guardian ad litem appeals, by permission of Special Term, from a portion of a judgment entered upon the report of a Referee which, among other things, overruled objections to the account made by the guardian. Certain subsidiary questions were raised upon the appeal that would become relevant if the objections should be sustained but they are unnecessary to explore in view of the conclusions reached herein.

The trust was established in 1925. The accounting proceeding was prompted by the death in 1952 of the prime beneficiary. The trust agreement provided that thereupon the remaining corpus should be divided into equal shares and trusts erected for the benefit of certain second life beneficiaries all of whom were living at the commencement of this proceeding. Upon the respective deaths of the latter each trust terminated and the agreement set forth directions for the division of the remaining principal. The guardian ad litem was appointed to represent certain infant and unknown contingent remaindermen. The objections of the guardian are based upon a provision in the agreement relating to the investment and reinvestment of trust funds. The trustee was given wide investment powers, including the right to invest and hold securities not permitted " for trustees' investments by the ordinary rules of law." It was further provided that " All investments and reinvestments of any of the trust funds held hereunder, and all sales of securities held by the Trustee as part of such trust funds, shall be made only with the approval of a majority of the Executive Committee of the Trustee."

The by-laws of the trustee at the time of the creation of the trust in 1925 provided for an executive committee of 10 members elected by the board of directors from their number, the

president and chairman of the board to be members by virtue of their offices. The settlor of the trust was a director of the trustee and was chairman of the board from 1925 or 1926 until his death in 1937. In December, 1931 the board adopted a resolution "That a committee consisting of three directors and three officers be appointed by the Chairman of the Board, to be known as the standing Trust Committee, whose functions shall be a continuous review of the investments held in the separate trusts and to advise and recommend as to the investment of trust funds." It should be noted that the authority of this committee with relation to investment of trust funds was limited to review, advise and recommend. It had no power to approve or disapprove.

A year later — in December, 1932 — the trustee's by-laws were amended with respect to the trust committee and the executive committee. The former was thereafter to consist of the president, the vice-president in charge of the trust division and three directors to be chosen by the board of directors. The executive committee was to consist of nine directors with the president and chairman of the board continuing to be members by virtue of their offices. This committee was vested with all the powers of the board when the latter was not in session. Five members constituted a quorum and weekly meetings were required. The trust committee was given power, by resolution, to authorize the investment of trust funds and the sale and exchange of trust securities.

The objections raised by the guardian relate to certain transactions, including purchases, sales and exchanges, during the period from 1930 to 1951. The focal point of the objections is the respective roles played by the trust committee and executive committee in implementing the requirement of the trust agreement that all investments and reinvestments should be made only with the approval of a majority of the executive committee. Specifically, the guardian objected to 28 transactions. Twenty-two of these were purchases or sales and six were exchanges of securities. In summary form it appeared that during the period from March 5, 1937 to November 1, 1937 there were 19 purchases or sales of which 13 were authorized in advance by the trust committee and 6 were ratified by that committee within two days after the purchase or sale. All of these 19 transactions and two stock exchanges, however, were not acted upon by the executive committee until April 26, 1938 — some six to nine months after the respective transactions — when all 21 transactions were approved by a blanket resolution of the committee. There were six exchanges of securities. As to four of these

there was neither authorization, approval nor ratification by either the trust committee or the executive committee. In addition there were two purchases of bonds with prior authorization by the trust committee but no ratification or approval by the executive committee. Lastly, there was a stock purchase with trust committee approval six days thereafter and executive committee approval 10 days thereafter.

It is the contention of the guardian, in substance, that the provision of the trust agreement vested in the executive committee a power of control over purchases, sales and exchanges of securities in this trust and the approval of that committee was required to be exercised prior to, or contemporaneously with, the making of the transaction (cf. 2 Scott on Trusts [2d ed.], § 185, p. 1358; *Matter of Hamersly*, 152 Misc. 903, 906). He further contends that subsequent approval or ratification by the executive committee was not legally permissible because thereby those exercising the power of control might then occupy a position in conflict therewith. Otherwise stated, it is argued that the directors, constituting the membership of the executive committee, in passing upon a transaction that had taken place six or nine months before might be torn, in the light of intervening developments, between its duty to the trust and a resulting loss to the trustee if the committee should disapprove the transaction (cf. *City Bank Farmers Trust Co.* v. *Cannon*, 291 N. Y. 125, 131, 132).

In answer to these contentions, and again passing over certain subsidiary issues, the trustee asserts, first, that it has complied with the directions of the settlor and second, assuming, though not conceding, that executive committee approval was required by the language of the trust instrument such approval at any time subsequent to the date of the transaction was a sufficient compliance. The claims of the trustee are interwoven with and largely based upon certain action claimed to have been taken by the Federal Reserve System that in effect mandated the trustee to delegate to a trust committee the authority to approve or disapprove transactions relating to trust funds. It is claimed — and so the Referee found — that in 1929 the Federal Reserve System promulgated a certain regulation F. Upon the trial subdivision (c) of section 6 of this regulation was produced by an officer of the trustee, who testified that it came from the files of the trustee and was " the regulation requiring banks performing trust functions to have a Trust Committee." It was received in evidence over the objection of the guardian that it was irrelevant. It would seem that the objection was well taken. Upon its face the regulation

applied only to National banks and not to a State bank such as the trustee.

Upon this document, however, the major part of the trustee's case and the decision of the Referee are founded. There was further testimony from officers of the trustee that in 1931 the latter received notification of this regulation and by its mandate the resolution of December, 1931 creating the trust committee and the amendments of the by-laws of December, 1932 creating the trust committee were adopted. The Referee found that this regulation required all banks under the supervision of the Federal Reserve System to establish a trust committee; that "from 1931 the Executive Committee was unable to function without the approval of the Trust Committee. For all intents and purposes the Trust Committee superseded the Executive Committee."

We are unable to agree with this conclusion based as it is solely upon subdivision (c) of section 6 of regulation F. There can be no doubt from a reading thereof that it applies prima facie only to national banks. Upon this appeal the guardian raises the question that the regulation has no applicability and in substance presses his original objection that the exhibit is irrelevant. He directs our attention to regulation H and contends that by its provisions State bank members are required to observe only those regulations applicable to them and that the provision of regulation F is not one. Moreover, in his brief he presents historical evidence tending to prove that the regulation received in evidence over his objection was not adopted in 1929 but in 1936. The guardian concludes that if this is so the action of the trustee in setting up a trust committee in 1931 and 1932 could not have been under compulsion of a Federal decree and the foundation upon which the trustee's case was tried and the decision made by the Referee collapses.

The trustee does not dispute the assertion that the pertinent regulation received in evidence was adopted in 1936 and not in 1929 but contends that most of the disputed transactions took place in 1937 and in that year the regulation was in effect. It seems to us that this misses the point. The case was tried and decided upon the theory that the provision of the trust agreement could not be complied with after 1931 because of the overriding effect of a decree of the Federal Reserve System. If this is so then the decision is based upon facts that absent further exploration, appear to be incorrect. The trustee asserts, however, that if greater emphasis had been placed upon this point at the trial it would have called additional witnesses, including officials from the Federal Reserve System, who would have

testified as to the practical interpretation and construction placed by the system upon the pertinent regulations.

We conclude that upon the present record it is impossible to pass upon this issue. A new hearing is required whereat there may be a full exploration by all parties of the applicable regulations and their impact, if any, upon the conduct of the trustee in the administration of the trust.

In view of the necessity for a further hearing we mention one other subject related to a subsidiary question. The objections of the guardian to 28 items in the account fall into definite factual patterns. Thus, as has been stated, 21 of these are purchases, sales and exchanges that for some unexplained reason were approved by the executive committee by a blanket resolution adopted some months after the respective transactions. Others are exchanges of securities in the same companies and it is claimed by the trustee that authorization or approval was not required. We find in the account, however, other transactions totaling more than one hundred during the period from 1931 to 1952. The guardian has filed objections to none of these. The objections were not filed solely on the basis of loss to the fund because the guardian's report lists 13 of the 28 items in which it is conceded there was no loss to the principal. In the posture in which the appeal comes to us and in the resulting claims of the necessity of a surcharge and deprivation of commissions it would seem that considerable light would be shed on the performance of the trust duties by proof relating to the manner in which the scores of transactions not here under attack were handled.

In the event it should be determined that the regulations of the Federal Reserve System had no bearing upon the conduct of the trustee in complying with the provision of the agreement then further questions would arise. As the appeal comes to us it is unnecessary to decide whether upon a finding of a breach of the trust agreement it is necessary to further find causal connection between such breach and any loss (cf. 2 Scott on Trusts [2d ed.], § 205.1; 50 Harv. L. Rev., p. 317).

The judgment appealed from should be reversed and a new trial of the objections ordered.

All concur. Present — McCurn, P. J., Kimball, Williams, Bastow and Goldman, JJ.

Judgment insofar as appealed from reversed on the law and facts and matter remitted to the Special Term for further proceedings in accordance with the opinion, with costs to all parties filing briefs payable out of the trust.